UNITED STATES of America

v.

Alan HELDON.

Crim. No. 79–153.

United States District Court,
E.D. Pennsylvania.

Jan. 17, 1984.

Faye S. Ehrenstamm, Dennis O. Wilson, Asst. U.S. Attys., Philadelphia, Pa., for plaintiff.

Joseph Miller, Philadelphia Defender Ass'n, Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Contending that his Fifth and Sixth Amendment rights were violated due to the Court's alleged non-compliance with the re-

quirements of FED.R.CRIM.P. 11 and the ineffective assistance of his retained counsel, petitioner Alan Heldon has moved to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.[1]

Petitioner was indicted with co-defendants Randy Johnston and Michael Brewer on June 21, 1979. The twenty-eight-count indictment included a charge, in Count 1, of conspiracy to distribute phencyclidine (hereafter PCP). The remaining counts consisted of charges of either distribution or possession with intent to distribute PCP.

Petitioner pleaded *nolo contendere* to counts one through seventeen, inclusive, and twenty through twenty-eight, inclusive, on October 16, 1979. On February 13, 1980, he was sentenced, on Counts 1 and 2, to consecutive five-year prison terms. Count 2 also included a two-year special parole term which was to run consecutively to the terms of imprisonment imposed under Counts 1 and 2. In addition, petitioner was sentenced to a five-year term of probation on each of seventeen other counts. The probationary terms were to run concurrently with each other, but consecutively to the sentences imposed under Counts 1 and 2. Lastly, the sentences were to run consecutively to any sentences petitioner may have received in any state court.

Petitioner's counsel filed a motion for reduction of sentence pursuant to FED.R. CRIM.P. 35 which was granted on September 22, 1980. The Court modified the prison sentences imposed under Counts 1 and 2 to run *concurrently* with each other. In addition, the probationary terms on each of the remaining counts were reduced to two years and were further modified to run *concurrently* with the two-year special parole term imposed under Count 2. The Court did not alter its prior mandate that the sentences run consecutively to any state court sentences imposed upon the petitioner.

Petitioner asserts that the Court violated the strictures of FED.R.CRIM.P. 11 by failing to determine:

1. whether the petitioner understood the nature of the charge, including the maximum possible penalty under the law;

2. whether there was a factual basis for the plea;

3. whether the plea was being entered into voluntarily;

4. whether the petitioner understood that he had a right to plead not guilty, to be tried by a jury, to confront and cross-examine all witnesses against him, and not to be compelled to incriminate himself;

5. whether the petitioner understood that the court's acceptance of the plea would result in his waiver of his right to trial; and

6. whether the petitioner knew that any answers he gave under oath and on the record could later be used against him in a prosecution for perjury.

Moreover, he contends that the representation he received from his retained counsel amounted to "ineffective assistance" in two respects. First, he argues that he had no choice but to plead *nolo contendere* due to counsel's inadequate preparation of a defense. He specifically points to counsel's alleged failure to conduct an investigation into the evidence supporting the indictment, to interview witnesses, and to do legal research. Secondly, petitioner claims his *nolo* plea was the product of the faulty advice and misrepresentations of defense counsel particularly in regards to the existence of a plea agreement with the Government. This latter contention required that we conduct a hearing to determine what factual basis, if any, exists to support it.

Consequently, on November 2, 1983, a full evidentiary hearing was held primarily to illuminate the facts surrounding petitioner's claim of ineffective assistance of counsel as it pertained to plea negotiations and the existence of a plea agreement. As to the other claims, the record was sufficiently complete to enable the Court to give them proper consideration. Moreover, at the close of the hearing, and in the face of

1. Petitioner filed the instant motion *pro se.* Thereafter, the Court appointed the Federal Defenders' Association to represent him at the evidentiary hearing held in connection with his motion and for all other purposes.

uncontradicted testimony and other evidence to the contrary, plaintiff abandoned his claim of ineffective assistance of counsel as it pertained to the issue of his counsel's inadequate preparation of a defense. (Motion Hearing Transcript at pp. 147–149, 151). Therefore, we address the remaining two claims in the order in which the petitioner presents them in his motion.

■ Petitioner's Rule 11 claim, as previously described, need not detain us. After a nearly verbatim statement of the language of the Rule, petitioner argues that the Court complied with none of its requirements. He does not support his contentions by pointing to specific omissions by the Court during the colloquy. Instead, he cites holdings in a host of cases generally discussing Rule 11 issues and baldly asserts that the cases from which those holdings were taken are equivalent to the case at bar. No effort is made to analyze and compare the facts of those cases to the facts of the instant matter. Moreover, to the extent petitioner's motion raises factual questions, such questions are directed more properly to his claim of ineffective assistance of counsel as it concerns the existence of a plea agreement. While there is a certain amount of overlap of issues, *e.g.,* voluntariness of the plea, between the Rule 11 claim and the ineffective assistance claim, we are here primarily concerned with the objective record of the change of plea colloquy.

The record evinces the Court's determination that the petitioner understood the nature of the charge, including the maximum possible penalty (Change of Plea Transcript pp. 6–15, 40–42), that there was a factual basis for the plea (C.P.T. pp. 19–33, 43), that the plea was entered into voluntarily (C.P.T. pp. 5, 33, 36–40, 43), that the petitioner understood his rights to plead not guilty, to a jury trial, to confront and cross-examine all witnesses against him, and to the presumption of innocence, *i.e.,* that he need not be compelled to incriminate himself (C.P.T. pp. 33–35), and, finally, that the petitioner understood that the Court's acceptance of the plea would result in a waiver of his rights. (C.P.T. p. 35).

Hence, none of the crucial core inquiries and advice was overlooked by the Court. The lone omission was the failure to advise the petitioner that any answers he might give under oath in response to questions from the Court about the offense may later be used against him in a prosecution for perjury. Petitioner argues that this "oversight" alone requires a vacation of the sentence. He cites, in support of his proposition, the case of *United States v. Boatright,* 588 F.2d 471, 475 (5th Cir.1979).

Petitioner's contention is without merit for several reasons. First, under FED.R. CRIM.P. 11(c)(5), the Court need only so advise the defendant "if the court *intends to question* the defendant under oath, on the record, and in the presence of counsel *about the offense* ". (emphasis added). In the case at bar, the Court never questioned nor did it intend to question the defendant under oath and on the record about the offenses. The Court's inquiries were limited to ascertaining only that information which was necessary to determine that the plea was being entered into knowledgeably, voluntarily and with sufficient basis in fact. The closest the Court ever came to inquiring about the offense was its question, following the Government's recitation of the facts that it was prepared to prove, concerning whether the defendant "wish[ed] to enter a defense to the facts as alleged and charged". (C.P.T. at p. 33). Under no circumstances can such a question be considered an inquiry "about the offense".

Secondly, the Fifth Circuit reversed its ruling in the *Boatright* case, relied on by petitioner, in the case of *United States v. Caston,* 615 F.2d 1111, 1116 (5th Cir.1980). In *Caston,* the Court held that

> Rule 11(c)(5) was added in 1975 to assure the fairness of a subsequent perjury prosecution, not the voluntariness of the plea. Because it is *not one of the core inquiries* under Rule 11, its omission does not mandate automatic reversal. (citations omitted) (emphasis added).

*Id.*

Finally, the petitioner has neither alleged nor proven any prejudice resulting from

the Court's failure to advise him under Rule 11(c)(5). In addition, the petitioner did not seek to raise this attack directly on appeal. Under these circumstances, a collateral attack, by way of a motion under 28 U.S.C. § 2255, will not be permitted when all that can be shown is a technical non-compliance with the Rule. *United States v. Timmreck,* 441 U.S. 780, 785, 99 S.Ct. 2085, 2088, 60 L.Ed.2d 634 (1979); *United States v. Laura,* 667 F.2d 365, 372 (3d Cir.1981).

Turning to the petitioner's remaining claim, it is alleged that his *nolo* plea was neither voluntarily nor intelligently made because it was premised upon the misrepresentations and inaccurate advice of his retained counsel. The primary contention raised by petitioner is that he wrongfully believed, based upon the misrepresentations of his attorney, that he had entered into a plea agreement with the Government. The alleged terms of his agreement, as he understood them, were that, in exchange for his *nolo contendere* plea to all counts against him, the Government would recommend a sentence of four years to run concurrently with his state court sentence. (M.H.T. p. 60). He further understood that this agreement would be acceptable to the, Court. (M.H.T. p. 60). It is his belief as to the existence of this agreement which, he argues, induced his *nolo* plea. In addition, petitioner alleges he had no choice but to enter a *nolo* plea because he could not afford the additional fee that his attorney would charge for going to trial. (M.H.T. p. 59–60).

There is absolutely no support in the record for petitioner's contention that he had entered into a plea agreement with the Government. Nor is there any objective evidence that he believed he had done so. Beginning with the obvious, there was never any written agreement filed with the Court. When asked, during the change of plea colloquy, what change of plea was contemplated, no plea agreement, with respect to the petitioner, was mentioned to the Court. It was merely stated that the petitioner intended to plead *nolo contendere* to all counts. (C.P.T. pp. 3–4). The only plea agreement reflected by the record is one between the Government and petitioner's co-defendant Michael Brewer. (C.P.T. pp. 3–4, 15–18, 37, 46). Upon questioning by the Court as to the existence of any undisclosed inducements, representations or agreements which may have prompted the petitioner's plea, he answered in the negative. (C.P.T. pp. 36–37, 39–40). A further question as to the existence of any out-of-court promise, representation, agreement or understanding which required the petitioner to respond untruthfully to the Court's inquiries produced an equally negative answer. (C.P.T. p. 39). When asked if anyone suggested to him what the attitude of the Court may be in the event the plea was accepted, petitioner again answered in the negative. (C.P.T. p. 37). Finally, when asked if he understood that he may not later contend that there was any such promise, representation, agreement or understanding made by or with any person, other than that which was set forth in open court that day, petitioner answered that he so understood. (C.P.T. p. 40).

We are not now prepared to disregard the overwhelming weight of the evidence in the record in light of the petitioner's testimony that he was advised by counsel to answer the Court's questions untruthfully because they were "simply a formality". (M.H.T. p. 61). It is inconceivable that this petitioner would have agreed to proceed in such a manner if an agreement truly had been reached with the Government. The motion and brief filed in this case by the petitioner while he was proceeding *pro se,* and his testimony at the hearing held in connection with the motion, bespeak the obvious intelligence of this college-educated man.[2] If he really were duped into

2. Testimony at the hearing on the instant matter showed that petitioner has a Bachelor of Science degree in chemistry from the Philadelphia College of Pharmacy and Science. It further revealed that he has taken graduate courses in

believing an agreement was reached and, further, that it was proper to state otherwise under oath in a court of law, he surely would have been put on notice to the contrary when the prosecuting attorney vehemently opposed his plea of *nolo contendere*. Petitioner's testimony that he was advised by counsel that the Government would make a "pro forma objection" does not convince us otherwise. (M.H.T. pp. 68–69). The Government's objection was anything but "pro forma". On two separate occasions during the change of plea colloquy the Assistant United States Attorney made it clear that his objection to the petitioner's *nolo* plea was sincere and emphatic. (C.P.T. pp. 3, 17). Only the objection to co-defendant Brewer's *nolo* plea was "pro forma" because the Government had reached a plea agreement with him. (C.P.T. pp. 4, 17).

Assuming, *arguendo*, that, after the change of plea hearing, petitioner still believed he had a plea agreement with the Government, he certainly would have learned otherwise during the course of the sentencing hearing. At that time, the Government argued strenuously for incarceration, including in its presentation the following comments to the Court:

> PCP, Your Honor, although not a narcotic controlled substance, is extraordinarily dangerous. As the pre-sentence report noted, it can produce a psychosis in the victim similar to the effect of schizophrenia. It is an animal tranquilizer, Your Honor, and this man was selling it to human beings.
>
> This is not the first time that he has been in court, not the first time he has been sentenced, and it is not the first time he has been involved with drugs. (Sentencing Transcript p. 13)

> .    .    .    .    .

> Your Honor, the reason he did it, I suggest to the Court, is for the money, completely regardless of the effect this would have on the ultimate victims and our society. (S.T. p. 14)

> .    .    .    .    .

biochemistry and pharmacology. (M.H.T. pp. 64–65).

> The federal interest, Your Honor, is more than just the continuing nature of the offense. It is the extraordinary quantities, and it is the extreme danger that this has presented to the community since Mr. Heldon began in this business. (S.T. p. 16)

> .    .    .    .    .

> First, I do not believe it is possible for this Court to consider the fact that he has not contested the charges, that he has given up his right to trial. *Courts, of course, are expected to hand down the same sentence, whether someone goes to trial or not. That is irrelevant.*
>
> Further, Your Honor, I would ask this Court to consider the community and the victims as well as Mr. Heldon. I don't know what this Court thinks the pre-sentence indicated about his chances for rehabilitation or his feelings about the evil deeds, as Mr. Shumkler put it, that he has performed in the past, and the effect that would have on this Court's sentencing. *But, Your Honor, I would ask the Court to keep this man off the streets.* (S.T. p. 16)

Nowhere in the record of the sentencing is there any indication of a plea agreement between the petitioner and the Government. Moreover, there is no mention of a four-year concurrent sentence of incarceration in exchange for the *nolo* plea. In fact, the Government argued to the Court that the plea was "irrelevant" and that courts "are expected to hand down the same sentence whether someone goes to trial or not". (S.T. p. 16). In addition, when given the opportunity to address the Court on his own behalf prior to sentencing, petitioner replied, "Thank you, Your Honor. Mr. Shmukler has spoken very ably in my behalf, and I have nothing further to add". (S.T. p. 20)

In the face of such strong objective evidence to the contrary, petitioner's claim that he had entered into a plea agreement with the Government or that he believed he had done so is unconvincing. Our determi-

nation is further supported by the weight of the credible testimony at the hearing on the motion at bar.

It is clear from the evidence adduced at the hearing that the Government was unwilling to enter into any plea agreement, the terms of which were acceptable to the petitioner or his counsel. (M.H.T. p. 102). It was the position of the Government that, for purposes of a plea agreement with the petitioner, a *nolo* plea was not acceptable; the petitioner would be required to plead guilty. (M.H.T. pp. 97, 135–138). In this regard, the evidence is uncontroverted that petitioner refused to enter a plea of guilty. (M.H.T. p. 54, 96). Moreover, the Government adamantly refused to reduce the number of counts in exchange for a plea, except those counts which would disappear anyway by reason of merging. (M.H.T. pp. 55, 101, 138). Lastly, with respect to sentencing, the Government insisted that the sentence imposed must result in petitioner being incarcerated for a period of time additional to that time which he was already serving on state court charges. (M.H.T. pp. 53, 98, 136). It was the Government's position that the petitioner was the key defendant in the case and, therefore, it was unwilling to compromise at all with respect to plea negotiations with him. (M.H.T. pp. 97, 132–133).

Because of the total disagreement in each of the key areas of plea negotiation, *i.e.*, type of plea, number of counts, and sentence, petitioner was unable to reach a plea agreement with the Government. (M.H.T. pp. 98, 102, 133). Petitioner and his parents were advised by his retained counsel that since the Government had not proposed an acceptable deal, no agreement had been reached. (M.H.T. pp. 102–103). Nonetheless, petitioner's attorney explained to him that, as an alternative it may be advisable to enter an open plea of *nolo contendere* to all counts. (M.H.T. p. 104). In so explaining he discussed a number of factors in support of this alternative.

First, it was the judgment of petitioner's counsel[3] that the Government's case against him was very strong, and counsel so advised him. (M.H.T. pp. 95–96, 104). Second, the plea agreement which had been reached between the Government and co-defendant Michael Brewer required, under its terms, that Brewer testify against the petitioner. (M.H.T. pp. 36, 58, 139). Third, the trial of the matter would be long, difficult and expensive and would probably result in his conviction. (M.H.T. p. 104). Fourth, the Government had antagonized the Court in some way with respect to its position as to the prospective pleas of all defendants. (M.H.T. pp. 55, 107). From a tactical standpoint, counsel believed that the petitioner could take advantage of the Government having antagonized the Court in his plea, *i.e.*, showing the Court that he was cooperative and the Government was the obstructionist. (M.H.T. p. 107). Fifth, the Government's unacceptable offers to recommend sentences of either three years consecutive to the state sentence or five years concurrent with the state sentence were, in counsel's opinion, probably heavier than the sentence which the Court would impose. (M.H.T. pp. 98, 104). Counsel told petitioner that he based his opinion on this Court's history of fair or relatively lenient sentences. (M.H.T. pp. 98–99, 104). However, he cautioned petitioner that a lighter sentence was not guaranteed. (M.H.T. p. 99).

Considering, then, the credible testimony from the hearing on the instant motion and the obvious weight of the objective evidence in the remainder of the record, we find that the petitioner voluntarily chose to enter an open plea of *nolo contendere* to all counts. We further find that this decision was based upon his consideration of his possible alternatives and the competent advice of counsel. Moreover, we find that petitioner was aware of the possible outcome of any of the alterna-

---

**3.** Petitioner testified that his attorney had twice before represented him in state court criminal matters. He further testified that he was partic-

ularly pleased with his representation on one of those matters because on "[o]ne of them the charge was dismissed". (M.H.T. p. 65)

tives he may have chosen. His disappointment with the sentence he received, even after the successful Rule 35 motion filed by his counsel, does not give him a basis upon which to challenge his plea as involuntary. Absent a plea agreement, the specifics of which as to sentencing are understood and accepted by both the parties and the Court, a plea is not rendered involuntary merely because the defendant relied upon the inaccurate predictions of counsel as to his sentence. *Masciola v. United States,* 469 F.2d 1057, 1059 (3d Cir.1972); *United States v. Nicholas,* No. 81–00077–4 slip op. at 8 (E.D.Pa. August 8, 1982). Having found that the petitioner never entered into a plea agreement with the Government and that his counsel never misrepresented to him that an agreement in fact existed, there exist no grounds upon which to vacate his sentence.

■ Finally, petitioner's claim that he was forced to plead *nolo* because he couldn't afford to go to trial is without merit. His uncontradicted testimony is that he knew that he could have counsel appointed to represent him if he could not afford to retain counsel. (M.H.T. p. 65)

For these reasons, we conclude that petitioner has not proven that his plea was rendered involuntary due to either the Court's noncompliance with FED.R. CRIM.P. 11 or the ineffective assistance of counsel.

The foregoing constitutes our findings of fact and conclusions of law.