**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Osban CASTON, Defendant-Appellant.**

**Nos. 79–5151, 79–5152.**

United States Court of Appeals,
Fifth Circuit.

April 24, 1980.

Russell Hirsch, Allan A. Ackerman, Chicago, Ill., for defendant-appellant in both cases.

Charles S. Saphos, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee in both cases.

Before VANCE, POLITZ and RANDALL, Circuit Judges.

VANCE, Circuit Judge:

Osban Caston, a professional car thief on parole for a prior offense, was indicted on May 31, 1978, in the Northern District of Texas and on September 5, 1978, in the Northern District of Georgia. In the Georgia indictment, Caston was charged with twelve counts of violating 18 U.S.C. §§ 2, 2312, 2313, and 2314 by transporting stolen automobiles in interstate commerce, causing stolen automobiles to be transported in interstate commerce, concealing and selling stolen automobiles, causing stolen automobiles to be concealed and sold, and knowingly causing counterfeited automobile certificates of title to be transported in interstate commerce. Similarly, the five-count Texas indictment charged Caston with causing stolen automobiles to be transported in interstate commerce in violation of 18 U.S.C. §§ 2 and 2312. In January 1979, the Texas case was transferred to the Northern District of Georgia under Fed.R.Crim.P. 20. A plea bargain agreement was negotiated. Caston, who had previously entered a plea of not guilty, then pleaded guilty to six counts of the Georgia indictment and three counts of the Texas indictment; the other counts were dismissed. The district judge sentenced Caston to five years confinement under each count with some sentences running concurrently and some consecutively; the total sentence was 30 years.

Caston apparently did not like the way his plea bargain turned out, and he appealed his conviction to this court. He argues that his guilty plea should be set aside because in accepting his guilty plea, the district court did not comply fully with the requirements of Fed.R.Crim.P. 11. He next asserts that the consecutive sentences imposed by the district judge were barred by the double jeopardy clause of the fifth amendment. Although the first question is a close one, we affirm.

### I.

Caston contends that the trial judge did not give him the advice or information required by Fed.R.Crim.P. 11(c)(3) and 11(c)(5)[1] before accepting his guilty plea. The record[2] indicates that the trial court did not explicitly mention that Caston had

---

1. Fed.R.Crim.P. 11(c) provides in pertinent part,

   (c) Advice to defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

   .    .    .    .    .    .

   (3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

   .    .    .    .    .

   (5) that if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement.

2. On January 18, 1979, before the trial court accepted Caston's plea, the following exchange occurred:

   CLERK: Raise your right hand, sir.
   Do you solemnly swear that the statements you shall make to the Court at this time shall be the truth, the whole truth and nothing but the truth, so help you God?
   MR. CASTON: Yes, I do.
   THE COURT: Mr. Caston, let me ask you a few questions.
   You are fully aware and familiar with the charges against you in both of these indictments?
   MR. CASTON: Yes, sir.
   THE COURT: Have you discussed them with your attorney, Mr. Hirsch?
   MR. CASTON: Yes, sir.

   .    .    .    .    .

   THE COURT: And you want us to dispose of it here on this plea of guilty?
   MR. CASTON: Yes, sir.
   THE COURT: Are you thoroughly familiar with the nature and consequences of a plea of guilty in these cases should I accept it?
   MR. CASTON: Yes, sir.
   THE COURT: You understand that if I accept your plea of guilty you don't get a trial?
   MR. CASTON: Right. I know it.
   THE COURT: You understand that you waive your presumption of innocence and all your constitutional protections, and all that you get is a sentence?
   MR. CASTON: Yes, sir.
   THE COURT: You understand?
   MR. CASTON: Yes, sir.
   THE COURT: And you still wish to plead guilty?

the right to a jury, the right to the assistance of counsel at a trial, and the right not to be forced to incriminate himself at trial, disclosures required by Fed.R.Crim.P. 11(c)(3), or that his sworn answers to the court's questions about his offenses could be admitted against him in a later perjury or false statement prosecution, a disclosure required by Rule 11(c)(5). Caston does not claim that he was prejudiced in any way by these omissions, but asserts that they are per se bases for reversal. In *United States v. Dayton*, 604 F.2d 931 (5th Cir. 1979) (en banc), however, this court held that not every violation of Rule 11 mandates automatic reversal.

MR. CASTON: Yes, sir.

THE COURT: And you understand that the maximum sentence I might impose on each count of these indictments is imprisonment of five years or a thousand dollars fine or both, on each of them?

MR. CASTON: Yes, sir.

THE COURT: And how many counts are there, all told? Six or seven?

MR. HIRSCH: Six on the indictment from here, Your Honor; and three on the other.

THE COURT: Nine counts.

So, that would be a total of forty-five thousand dollars or forty-five years maximum. Do you understand that?

MR. CASTON: Yes, sir.

THE COURT: And you still wish to plead guilty?

MR. CASTON: Yes, sir.

THE COURT: Well, are you in fact guilty?

MR. CASTON: Yes.

THE COURT: Tell us a little bit about what happened.

MR. CASTON: Well, I don't know, some guys came down here with some cars and got caught with them and they said I helped them bring them down here, said I sent them down here.

THE COURT: Well, you're charged with transporting across state lines, or concealing?

MISS CARNES: Both, Your Honor.

MR. HIRSCH: Both, Your Honor.

MISS CARNES: Both.

THE COURT: Well, did you know these cars were stolen?

MR. CASTON: Yes, sir.

THE COURT: And you did help them conceal them or transport them or dispose of them?

MR. CASTON: Yes.

THE COURT: So, you're guilty as charged?

MR. CASTON: Yes, sir.

The judge also questioned Caston during the February 16, 1979, sentencing procedures:

THE COURT: Are you thoroughly familiar with the nature of the charges pending against you?

MR. CASTON: Yes, sir.

THE COURT: There are nine counts here in two separate indictments of interstate transportation of stolen automobiles.

You're familiar with that?

MR. CASTON: Yes, sir.

THE COURT: That's the ones you pled guilty to, and there's an agreement that some others are to be dropped?

MR. CASTON: Yes, sir.

THE COURT: Now, are you also thoroughly familiar with the nature and the consequences of a plea of guilty to these nine counts if I accept your plea of guilty?

MR. CASTON: Yes, sir.

THE COURT: You know what the consequences and effect of that are?

MR. CASTON: Yes, sir.

THE COURT: You understand that if I accept these pleas of guilty, you don't get a trial?

MR. CASTON: Yes, sir.

THE COURT: You do not get the right to confront the witnesses against you; you waive your presumption of innocence—

MR. CASTON: Yes, sir.

THE COURT: —and surrender all of your other constitutional protections?

In fact, all you get on a plea of guilty to these nine counts is a sentence on each one of them. Do you understand that?

MR. CASTON: Yes, sir.

THE COURT: Do you understand that the maximum penalty I might impose is five years in prison or five thousand dollars fine on each of these nine counts?

MR. CASTON: Yes, sir.

THE COURT: Well, now, and you still wish to plead guilty?

MR. CASTON: Yes, sir.

THE COURT: Well, are you in fact guilty?

MR. CASTON: Yes, Sir.

THE COURT: In all nine instances?

MR. CASTON: Yes, sir.

THE COURT: What were you in, an automobile theft ring of some sort, as charged, set out in the presentence report?

MR. CASTON: Yes, sir.

.    .    .    .    .

THE COURT: Has anybody promised you anything in the way of leniency or recommendations or anything of any character whatsoever—

MR. CASTON: No, sir.

THE COURT: —to cause you to enter these pleas?

MR. CASTON: No, sir.

THE COURT: Or tender these pleas?

MR. CASTON: No, sir.

THE COURT: Do you enter them freely and voluntarily, of your own free will and accord?

MR. CASTON: Yes, sir.

THE COURT: All right. I'll accept your pleas of guilty to the nine counts involved.

The Supreme Court declared in *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), that "a defendant is entitled to plead anew if a United States district court accepts his guilty plea without fully adhering to the procedure provided for in Rule 11." *Id.* at 463–64, 89 S.Ct. at 1169.[3] The 1966 version of Rule 11 in effect when *McCarthy* was decided was a relatively simple pronouncement containing less than one tenth as many words as the version we review today. *United States v. Dayton*, 604 F.2d at 936. In *Dayton* this court reasoned that the automatic reversal rule of *McCarthy* should be invoked when a trial court wholly fails to address any of the three core considerations embodied in the 1966 rule, lack of coercion, comprehension of the charge, and knowledge of the plea's direct consequences, but that a harmless error standard, *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), applies to "inadequate addresses" of these three core inquiries or to unconnected "constitutional errors" that arise from Rule 11 proceedings. 604 F.2d at 939. We explained,

> We have held that the rule must be fully and faithfully followed, and we do not doubt that the district courts of this circuit will make all efforts to follow our mandate. The question here is not whether such efforts should be made but how we should appraise them when they are. Nothing from above requires us to view fallings off from post-*McCarthy* additions to the rule as meriting automatic reversal, and we decline to do so. Where each of Rule 11's core inquiries has been reasonably implicated in the rule's required colloquy, we will examine its treatment to determine whether it has been sufficiently exposed to inquiry and determination. If so, we will not disturb the result. As for post-*McCarthy* additions to the rule—many, if not all, of which require determinations of fact that can scarcely be described as ultimate—nothing would prevent the trial court from making each the subject of a fact-

finding. Should it do so, we would review them in accordance with the clearly erroneous rule and that of harmless error, as in the case of any other finding by a trial judge sitting in a criminal case where a jury has been waived.

*Id.* at 940.

■ We reject Caston's contention that the Rule 11(c)(3) omissions require reversal. The district judge adequately addressed the three core considerations of Rule 11 under *McCarthy*. He asked numerous questions about whether Caston had elected without coercion to plead guilty and whether he comprehended the charges against him. The judge asked Caston if he understood that by pleading guilty he waived his right to a trial, his presumption of innocence, his right to confront the witnesses against him, and all his constitutional protections. He told Caston that he would not get a trial, only a sentence, and described the maximum possible penalties for the offenses. He repeatedly gained assurance that Caston was familiar with the nature and consequences of a guilty plea. *See* note 2 *supra*. Caston had changed his original plea of not guilty to a guilty plea pursuant to a plea bargain agreement. He was an experienced defendant and was actively represented by counsel during the plea proceedings. We are convinced from the record that Caston understood his alternatives and the rights he was waiving. *Cf. Kloner v. United States*, 535 F.2d 730, 733–34 (2d Cir.), *cert. denied*, 429 U.S. 942, 97 S.Ct. 361, 50 L.Ed.2d 312 (1976) (relief sought under 28 U.S.C. § 2255). *See generally North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970); *Wilkins v. Erickson*, 505 F.2d 761, 763–64 (9th Cir. 1974); *United States v. Sherman*, 474 F.2d 303, 305 (9th Cir. 1973). Although the trial judge did not comply adequately with Rule 11(c)(3), we find that he did sufficiently determine that Caston understood the direct consequences of his plea including his waiver of certain constitutional rights. *See United States v. Dayton*, 604 F.2d at 942–

---

**3.** The court reached that result as a matter of statutory construction, not as a point of consti-

tutional mandate. *Id.* at 464, 465, 89 S.Ct. at 1169, 1170.

43.[4] Caston does not claim that he was injured by the court's failure to comply with Rule 11(c)(3); therefore, the error was harmless beyond a reasonable doubt and does not merit reversal. *See Chapman v. California*, 386 U.S. at 21–22, 87 S.Ct. at 826–27.

■ We also reject Caston's argument that the Rule 11(c)(5) omission demands reversal. Although his point is clearly supported by our panel holding in *United States v. Boatright*, 588 F.2d 471, 475 (5th Cir. 1979), the automatic reversal requirement in *Boatright* is no longer viable in the wake of our en banc decision in *Dayton*. *See* 604 F.2d at 941. Rule 11(c)(5) was added in 1975 to assure the fairness of a subsequent perjury prosecution, not the voluntariness of the plea. *United States v. Conrad*, 598 F.2d 506, 508–09 (9th Cir. 1979); *United States v. White*, 572 F.2d 1007, 1009 n.4 (4th Cir. 1978). Because it is not one of the core inquiries under Rule 11, its omission does not mandate automatic reversal. *United States v. Conrad*, 598 F.2d at 509; *see United States v. Dayton*, 604 F.2d at 939–40. Caston is not being prosecuted for perjury and concedes that the error was not prejudicial; so it does not warrant reversal under the harmless error standard. *See Chapman v. California*, 386 U.S. at 21–22, 87 S.Ct. at 826–27.

## II.

Caston also contends that his consecutive sentences under counts 1 and 2 and counts 4 and 5 of the Georgia indictment violate the double jeopardy clause of the fifth amendment. In Count 1 he was charged with transporting a Chevrolet Corvette from Illinois to Atlanta in violation of 18 U.S.C. § 2312, and in Count 2, with concealing, bartering, selling and disposing of the same

---

4. The Supreme Court held in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), that, for a guilty plea to be voluntary, waiver of a defendant's constitutional rights to trial by jury, to confrontation of his accusers, and against compulsory self-incrimination must be disclosed by the record and cannot be presumed "from a silent record." *Id.* at 243–44, 89 S.Ct. at 1712–13. The court did not say, however, that waiver must affirmatively appear as long as the record is not silent. *See Summers v. United States*, 538 F.2d 1208, 1209–10 & n. 1 (5th Cir. 1976); *United States v. Frontero*, 452 F.2d 406, 415 (5th Cir. 1971). It found on the facts of that case that "there was reversible error 'because the record does not disclose that the defendant voluntarily and understandingly entered his pleas of guilty.'" *Id.* 395 U.S. at 244, 89 S.Ct. at 1713 (quoting *Boykin v. Alabama*, 281 Ala. 659, 663, 207 So.2d 412, 415 (1968) (dissenting opinion)). While the Constitution thus requires that the record indicate the voluntariness of any waiver of these three rights of jury trial, confrontation, and non-self-incrimination, it does not require that the district judge go beyond these "constitutional minima," *United States v. Dayton*, 604 F.2d at 935 n.2, to ask the specific questions that Rule 11(c)(3) imposes as a prophylactic procedure. A defendant's waiver of those three rights very well might be voluntary and intelligent without compliance with the prophylactic safeguard of Rule 11(c)(3). *Boykin* requires reversal if the record does not disclose that the defendant voluntarily and understandingly entered his pleas of guilty, but not if the record discloses voluntary and intelligent waiver without the prophylactic questions under Rule 11(c)(3). District judges should scrupulously follow the procedures under Rule 11(c)(3), but their occasional and lamentable shortcomings do not invoke the automatic reversal rule of *Boykin* if the defendant's waiver is nevertheless shown to be voluntary and intelligent.

Caston does not contend that he was unaware of his rights to jury trial, to confrontation, against self-incrimination, and to counsel. He does not suggest that he was unaware that a guilty plea necessarily waived those rights. The district judge asked whether Caston understood that "you don't get a trial" and "[y]ou do not get the right to confront the witnesses against you," *see* note 2 *supra*; Caston obviously understood that he had the right to the assistance of counsel. The judge also asked whether Caston knew the language of pre-*McCarthy* Rule 11, and whether he "underst[oo]d that you waive . . . all your constitutional protections." *See id.* The Supreme Court said in *McCarthy*, "The nature of the inquiry required by Rule 11 must necessarily vary from case to case . . . ." 394 U.S. at 467, 89 S.Ct. at 1171. In light of the circumstances of this case, we believe that the record indicates that Caston voluntarily and intelligently waived his jury trial and self-incrimination rights, although the court below did not comply fully with Rule 11(c)(3). *See Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (guilty plea entered in 1959 voluntary and intelligent even though defendant not specifically advised of *Boykin* rights).

automobile in violation of *id.* § 2313. In Count 4 he was similarly charged with transporting a particular Lincoln Town Car from Chicago to Atlanta in violation of section 2312, and in Count 5, with concealing, bartering, selling and disposing of the same vehicle in violation of section 2313. Caston relies on our holdings in *United States v. Hernandez,* 591 F.2d 1019 (5th Cir. 1979) (en banc), and in *United States v. Casey,* 540 F.2d 811 (5th Cir. 1976), to support his double jeopardy argument based on alleged double punishment for the same offense. Neither *Hernandez* nor *Casey,* however, indicates that the fifth amendment bars the consecutive sentences imposed in this case.

*Hernandez* revolved around the legislative intent behind a different statute. The defendant was convicted both of possession with intent to distribute and distribution of heroin in violation of the same subsection of 21 U.S.C. § 841(a)(1). All of the evidence against Hernandez arose from a single transaction in which Hernandez sold heroin to two undercover agents. We held that, in enacting that single provision containing alternative phrases, Congress did not intend to make a single delivery of narcotics punishable as two separate offenses. "When the intent to distribute was executed by a successful sale, the possession with intent to do so merged into the completed offense." 591 F.2d at 1022. In his opinion for the court en banc, Judge Rubin expressly stated that the issue was narrow and that the court decided no more than was necessary to carry out congressional intent in the specific circumstances of the case. *Id.*

*Casey* dealt with the specific sections before us and the interstate transportation of a single stolen vehicle. The case provides no support for Caston, however, because the court simply held that the evidence did not prove the section 2312 violation. 540 F.2d at 815 n. 8. It cannot be read even to imply that Casey could not also have been convicted and sentenced under that section if the government proved that he concealed the stolen automobile as charged.

Cumulative punishment, consistent with the double jeopardy clause, may be imposed for acts constituting violations of two separate statutory provisions, as long as "each provision requires proof of an additional fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *Accord, Simpson v. United States,* 435 U.S. 6, 11, 98 S.Ct. 909, 912, 55 L.Ed.2d 70 (1978); *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). A conviction for transporting in interstate commerce a stolen motor vehicle in violation of section 2312 and one for concealing and selling the same motor vehicle in violation of section 2313 clearly require proof of different sets of facts. This court has consistently held that defendants may be convicted of violating both statutes with the same vehicle and sentenced consecutively. See *United States v. Marvel,* 493 F.2d 15, 16 (5th Cir. 1974); *United States v. Stone,* 411 F.2d 597, 599 (5th Cir. 1969); *Strother v. United States,* 387 F.2d 385, 386 (5th Cir. 1967), *cert. denied,* 391 U.S. 971, 88 S.Ct. 2038, 20 L.Ed.2d 886 (1968). The consecutive sentences imposed by the district judge in this case thus were not barred by the double jeopardy clause of the fifth amendment.

AFFIRMED.