UNITED STATES of America, Plaintiff-Appellee,

v.

Carl Thomas GUICHARD, Defendant-Appellant.

No. 85–1096.

United States Court of Appeals, Fifth Circuit.

Jan. 8, 1986.

Steve John Williams, Irving, Tex. (Court-appointed), for defendant-appellant.

Marvin Collins, Fort Worth, Tex., James A. Rolfe, U.S. Atty., Christopher Lee Milner, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GARWOOD, HIGGINBOTHAM, and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Carl Thomas Guichard appeals his conviction for mailing a threatening communication in violation of 18 U.S.C. § 876, to which he pleaded guilty, claiming primarily that there was a failure to fully comply with Fed.R.Crim.P. 11 ("Rule 11"). We affirm.

### Facts and Proceedings Below

Appellant was charged with four counts of violating 18 U.S.C. § 876, which makes it a crime to send threatening communications through the mail. The indictment alleged that on four separate occasions between October 11 and October 28, 1984, the appellant knowingly and wilfully caused to be delivered by the United States Postal Service letters threatening to injure Lorraine Diane Karkosky, his common-law

wife.[1] In one letter mentioned in the indictment, Pat Karkosky, Lorraine's mother, was also threatened. On December 20, 1984, appellant pleaded not guilty to these charges during his initial arraignment.

Pursuant to a later plea bargain, appellant subsequently pleaded guilty at his re-arraignment to one count of mailing a threatening communication in return for the dismissal of the remaining three counts. A Rule 11 proceeding was then conducted and Judge Buchmeyer thereafter accepted appellant's guilty plea. On February 1, 1985, Judge Porter, after a sentencing hearing, assessed appellant a three-year sentence. At this hearing, appellant stated that he was prompted to mail the letters because Lorraine Karkosky had left him and taken their two children away from Houston, where he lived, to Dallas.

After being sentenced, appellant filed his notice of appeal. He now asserts four respects in which Rule 11 allegedly was not complied with and which he claims vitiate his conviction: (1) that he was not informed that a guilty plea waives his right to confront the witnesses against him, (2) that he was not informed of the exact nature of the charge against him, (3) that the district judge failed to inquire whether the plea was being made freely and voluntarily, and (4) that his guilty plea lacked a sufficient basis in fact and should not have been accepted.

## Discussion

### Rule 11

Rule 11 "creates a prophylactic scheme designed to insure both that guilty pleas are constitutionally made and that a full record will be available in the event that a challenge is made to the plea." *United States v. Adams*, 634 F.2d 830, 837 (5th Cir.1981). To this end, Rule 11 specifies a long list of substantive and procedural requirements to be observed before a guilty plea is accepted. This Court does not, however, require "letter-perfect" compliance

with all of these requirements. *See United States v. Dayton*, 604 F.2d 931, 939 (5th Cir.1979) (en banc), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). Indeed, in 1983 Rule 11(h) was added to ensure application of a harmless error rule in appeals based on noncompliance.

In *Dayton*, we held *en banc* that if the three core concerns of Rule 11 are met— that the guilty plea is free from coercion, that the accused understands the nature of the charges against him, and that the accused knows the direct consequences of his guilty plea—there is no violation of the body or spirit of Rule 11. *Dayton, supra*, at 939–40. We found that reversible error exists only when there is an "entire failure" to address any of the three core concerns of Rule 11. *Id.* at 939–40. However, an "inadequate address," or less than "letter-perfect" compliance with Rule 11, is harmless error if the three core concerns are met and the accused has shown a desire "to come to terms with the legal system, and to admit his fault." *Id.* at 940. We noted that an earlier intimation by the Supreme Court that "prejudice inheres in a failure to comply with Rule 11," *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 1173, 22 L.Ed.2d 418 (1969), concerned a much simpler version of Rule 11 than the Rule at issue in *Dayton*. *Dayton, supra*, at 939–40. *McCarthy*, we found, was concerned with the core values of Rule 11 and should not be extrapolated to require strict compliance with the "punctilios" of a now greatly expanded and more detailed Rule 11. *Id.* at 940. The dissent in *Dayton* disagreed with this analysis, observing that "[a]lone among the circuits that have considered the question, this court now refuses to require literal compliance with Rule 11." *Id.* at 948 (footnote omitted). Thus, even before the adoption of Rule 11(h) we held that specific Rule 11 rights are often ancillary to the larger *McCarthy* concerns, and that all Rule 11

---

1. There is doubt as to the marital status of Lorraine Karkosky and appellant. Appellant claims she is his common-law wife, but apparently he is still married to a "former" wife because the divorce decree was never finalized. Resolution of this question is not necessary for this appeal and therefore we do not decide it.

errors do not therefore require automatic reversal.

## Confrontation of Witnesses

Appellant claims that during the Rule 11 proceeding accompanying his guilty plea the district judge failed to warn him that his plea waived his right to confront the witnesses against him, as required by Rule 11(c)(3).[2] The record does indeed indicate that the district court neglected expressly to inform appellant that a guilty plea waived his right to confront witnesses, but the record also shows that all of the other requirements of Rule 11, in particular Rule 11(c), were met.[3] Thus, as appellant claims, the record contains technical error. As noted, however, reversal requires more than this; it requires an entire failure to meet a core concern. *See id.*

■ Of the three core concerns of Rule 11, only the requirement that the accused knows the direct consequences of his plea is implicated when the accused alleges that he was not informed that a guilty plea

waived his right of confrontation. In determining whether the appellant was knowledgeable of these consequences, we observe that he was informed of all other Rule 11 rights, including, *inter alia*, that he waived the right to a jury trial, that he waived the right not to testify against himself, that he knew the maximum penalty against him, and that he waived the right to force the state to meet its burden of proof beyond a reasonable doubt. *See* note 3, *supra.* Where, as here, the only deficiency respecting this core concern is the singular failure to mention one Rule 11(c) right, here the right of confrontation, we cannot hold that this constitutes an "entire failure" to inform the appellant of the consequences of his plea. Appellant knew he had waived a trial at which he did not have to testify and the government had to affirmatively prove his guilt, and could not rely on any failure of his to testify, all of which to a significant extent implies a waiver of the right of confrontation.

---

**2.** Fed.R.Crim.P. 11(c)(3) provides in pertinent part:

"(c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

" . . . .

"(3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself. . . ."

**3.** The following colloquy appears in the record of the defendant's rearraignment:

"THE COURT: Do you understand the charges that are being made against you?
"THE DEFENDANT GUICHARD: Yes, Your Honor.
"THE COURT: Have you discussed those charges with Mr. Williams [defense counsel]?
"THE DEFENDANT GUICHARD: Yes, Your Honor.
"THE COURT: Have you discussed with him the penalties that might be imposed if I accept your plea of guilty?
"THE DEFENDANT GUICHARD: Yes, Your Honor.
"THE COURT: Do you understand that you have a right to plead not guilty?

"THE DEFENDANT GUICHARD: Yes, Your Honor.
"THE COURT: And do you understand that if you pled not guilty the Government would have the burden of proving that you were guilty beyond a reasonable doubt?
"THE DEFENDANT GUICHARD: Yes, sir.
"THE COURT: You understand you would have a right to a jury trial?
"THE DEFENDANT GUICHARD: Yes, sir.
"THE COURT: You understand you would have a right not to testify?
"THE DEFENDANT GUICHARD: Yes, sir.
"THE COURT: You understand that if you didn't testify during the trial that couldn't be held against you?
"THE DEFENDANT GUICHARD: Yes, sir.
"THE COURT: Do you understand that you give up these rights if you plead guilty?
"THE DEFENDANT GUICHARD: Yes, Your Honor.
"THE COURT: Now, have you discussed with your client the charges being made against him and the maximum penalties involved?
"MR. WILLIAMS: Yes, sir.
"THE COURT: In your opinion does he understand both?
"MR. WILLIAMS: Yes, sir.
"THE COURT: Then how do you plead to the charges in Count 1 of the Indictment?
"THE DEFENDANT GUICHARD: Guilty, Your Honor."

Moreover, we observe that appellant had competent counsel who obviously had advised him both of the charge and the ramifications of a guilty plea. We find, therefore, that appellant knew the consequences of his plea. *United States v. Caston,* 615 F.2d 1111, 1115–16 (5th Cir.), *cert. denied,* 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980).

Additionally, in the past we have held similar types of errors harmless. *See Caston, supra,* at 1115–16. In *Caston,* for example, we held that despite the district judge's failure to inform the defendant of his right to a jury, of his right to the assistance of counsel at trial, of his right not to incriminate himself at trial, and that his sworn answers to the court's questions could be used against him in perjury charges, all of which are required by Rule 11, the error was harmless. *Caston, supra,* at 1115–16. We stated, "Although the trial judge did not comply adequately with Rule 11(c), we find that he did sufficiently determine that Caston understood the direct consequences of his plea including his waiver of certain constitutional rights." Thus in *Caston* we found no entire failure of this core concern. *Id.* at 1115 (citing *Dayton, supra,* at 942–43). In *Adams, supra,* at 839, we focused on these broader core concerns by noting that "[t]he ban on judicial participation in plea discussions is not a 'technical' amendment to the Rule, as are, for example, the detailed explanations required of the judge by Rule 11(c)." We also note that even before the quite substantial 1974 amendments which added most of Rule 11(c), *see* Rule 11(c) advisory committee notes to 1974 amendments, this Court had held that an error similar to the one here did not allow the defendant to plead anew. *United States v. Frontero,* 452 F.2d 406, 415 (5th Cir.1971) (upholding

guilty plea despite defendant not being informed that his plea waived the right of confrontation and the right of self-incrimination).

Our analysis is further strengthened by the addition of section (h) in the 1983 amendments to Rule 11, providing: "Any variance from the procedures required by this rule which does not affect substantive rights shall be disregarded." This amendment reversed the *per se* doctrine then in vogue for Rule 11 violations, *see Dayton, supra,* at 948 (dissent), and instituted a harmless error analysis. Like Fed.R. Crim.P. 52(a), the harmless error provision for most other criminal case procedural violations, *see* Rule 11(h) advisory committee notes (discussing how *McCarthy* led many appellate courts to reject harmless error for Rule 11 cases), the new Rule 11(h) does not attempt to define harmless error.[4]

In the face of Rule 11(h), we are unwilling to expand the *Dayton* jurisprudence categories of Rule 11 transgressions which result in reversal. In *United States v. Corbett,* 742 F.2d 173, 179 n. 14 (5th Cir. 1984), one of our first decisions to discuss Rule 11(h), we stated that "[w]e are convinced ... that the addition of section (h) comports with our prior practice." We further stated that "[c]learly, Rule 11(h), as applied to core concerns, is designed to forgive 'inadequate addresses' not 'entire failures.' " *Id.* The advisory committee to Rule 11(h) noted that the strict "prejudice inheres" rule of *McCarthy* Rule 11 violations is inapplicable to the current, expanded version of Rule 11. It stated:

"[I]t is important to recall that *McCarthy* dealt only with the much simpler pre-1975 version of Rule 11, which required only a brief procedure during which the chances of a minor, insignifi-

---

**4.** The advisory committee notes to Rule 11(h) do provide examples of what it considers to be harmless error. The committee stated:

"Illustrative [of Rule 11(h) harmless errors] are: where the judge's compliance with subdivision (c)(1) was not absolutely complete, in that some essential element of the crime was not mentioned, but the defendant's responses clearly indicate his awareness of that element

...; where the judge's compliance with subdivision (c)(2) was erroneous in part in that the judge understated the maximum penalty somewhat, but the penalty actually imposed did not exceed that indicated in the warnings ...; and where the judge completely failed to comply with subdivision (c)(5), which of course has no bearing on the validity of the plea itself...." (Citations omitted.)

cant and inadvertent deviation were relatively slight, [and] [t]his means that the chances of a *truly* harmless error ... are much greater under present Rule 11 than under the version before the Court in *McCarthy.*" Rule 11(h) advisory committee notes.

Although the committee does not specifically cite *Dayton,* the above passage is to a large extent an acceptance of the Rule 11 chronological analysis employed by this Court in *Dayton* to form our "core concern" approach for Rule 11 transgressions.[5] Thus, we are justified in rejecting appellant's claims based on a *Dayton* analysis.

*Nature of the Charge*

Guichard further asserts that during the Rule 11 hearing he was not adequately advised of the nature of the charges against him and this, he claims, is also fatal to his plea. He argues that the district judge merely asked a few perfunctory questions about the charge and failed to advise him in any meaningful manner.[6] This contention is not well founded.

In *United States v. Coronado,* 554 F.2d 166, 173 (5th Cir.), *cert. denied,* 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977), this Court held that the district court in a

Rule 11 proceeding " 'must explain the meaning of the charge and what basic acts must be proved to establish guilt.' " *Id.* at 173 (quoting *Woodward v. United States,* 426 F.2d 959, 962 (3d Cir.1970)). As the Supreme Court stated, the defendant must possess "an understanding of the law in relation to the facts." *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). In analyzing whether this knowledge is attained by a defendant, we have stated that the district court "should address the problem on the assumption that the defendant is ignorant of the nature of the charges," *Coronado, supra,* at 172.

■ In this case, the record clearly shows that the appellant was informed of the nature of the charges against him. The charge here is relatively simple.[7] There are no technical terms likely to be unfamiliar to lay persons. Likewise, there are no particularly subtle aspects of this offense which must be grasped before one can understand the charge. In relatively simple cases of this sort, we have held that "a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice." *Dayton, supra,* at 938. Here, the indictment was read to appellant and the district

---

**5.** The Sixth Circuit, one of the few circuits to yet take a position on rule 11(h), has taken a broad, unitary approach to the relatively new harmless error provision. *United States v. Stead,* 746 F.2d 355, 356 (6th Cir.1984) ("The failure to mention the specific rights named by the defendant [the right against self-incrimination and the right to confront and cross-examine witnesses] does not preclude a finding that Stead voluntarily and intelligently entered his guilty plea."). This is a far cry from the literal approach that the Sixth Circuit formerly followed. *Id.* This approach appears to look at all the surrounding facts in determining whether the error is harmless.

**6.** Rule 11(c)(1) provides in pertinent part:

"**(c) Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

"(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the

maximum possible penalty provided by law, including the effect of any special parole term...."

**7.** At appellant's rearraignment, the district judge asked the Assistant United States Attorney to present the charge. The prosecutor stated in pertinent part:

"On or about October 11, 1984 in the Dallas Division of the Northern District of Texas, defendant Carl Thomas Guichard, knowingly and wilfully caused to be delivered by the United States Postal Service ... a letter ... which letter contained a threat to injure the person of another; to-wit, to kill Lorraine Diane Karkosky. A violation of Title 18, United States Code, Section 876."

18 U.S.C. § 876 provides, in pertinent part: "Whoever knowingly so deposits or causes to be delivered ... any communication ... containing any threat to kidnap any person or any threat to injure the person ... shall be fined not more than $1,000 or imprisoned not more than five years, or both."

We find neither the charge nor the statute itself particularly complex.

judge inquired thereafter into appellant's understanding of the charge.[8]

Appellant was sufficiently informed of the nature of the charge against him. At appellant's initial arraignment, before the Rule 11 proceeding, the record shows that appellant was asked by the district judge whether he had spoken with counsel and appellant replied that he had. The judge directly addressed the appellant and asked whether appellant understood the charges. Appellant replied affirmatively. At his re-arraignment, where he pleaded guilty and the Rule 11 proceeding transpired, appellant was read the charges against him. He was twice asked if he understood the charges and he twice replied that he did. When asked, appellant stated that he had discussed the charge against him with his attorney. The district judge also inquired whether appellant had any questions about the charge, and the appellant replied in the negative. Further, appellant signed a "Factual Resume" that identified each and every element of the crime with which he was charged.[9] The judge also asked appellant's counsel whether he thought appellant understood the charge. Counsel replied affirmatively. We find that the district judge more than adequately informed appellant of the nature and scope of the charge against him.

*Voluntariness of Plea*

Appellant also asserts that his plea is invalid under Rule 11 because the court failed to inquire fully whether the plea was made freely and voluntarily.[10] Appellant claims that, as the Supreme Court has noted, a plea is not "voluntary ... unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 2257–58, 49 L.Ed.2d 108 (1976) (citing *Smith v. O'Grady*, 312 U.S. 329, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941)).

There has been no claim of coercion in the literal sense. *See Dayton, supra*, at 938. As to any claim of involuntariness grounded in appellant's lack of knowledge of the charge, we find, as noted above, that the district judge adequately established during the Rule 11 hearing that the appellant understood the charge against him. The judge also advised the appellant of the rights he was waiving by his plea, and proceeded to question him as to any possible coercion or additional promises made by the government or prosecutor. To the latter inquiry, the appellant responded negatively. The fact that the court did not expressly use the precise word "voluntary" when addressing appellant does not render the proceedings insufficient. Taken as a whole, the record shows that the court ascertained from appellant that the plea was in substance voluntary. Further, counsel for appellant during the Rule 11 proceeding stated that it was his opinion that the plea was completely voluntary.

In *United States v. Araiza*, 693 F.2d 382, 385 (5th Cir.1982), we held that in the ab-

**8.** The appellant was read the charges against him, *see* note 7, *supra*, and the following colloquy then appears in the record of appellant's rearraignment:

"THE COURT: Do you have any questions about the charges?
"THE DEFENDANT GUICHARD: No, sir.
"THE COURT: Do you understand the charges that are being made against you?
"THE DEFENDANT GUICHARD: Yes, Your Honor."

**9.** The appellant and his counsel prepared the following "Factual Resume", which they both signed:

"FACTUAL RESUME
"On or about October 11, 1984, in Irving, Texas, Defendant CARL THOMAS GUICH-ARD knowingly and wilfully caused to be delivered by the U.S. Postal Service, according to the directions thereon, a letter addressed to
"Larry Karkosky, American Western Custom Homes
"901 Esters Road, P.O. Box 154356
"Irving, Texas 75015
"which letter contained a threat to kill Lorraine Diane Karkosky."

**10.** Rule 11(d) provides in pertinent part:

"**(d) Insuring That the Plea is Voluntary.** The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement."

sence of overt coercion the district court may consider whether the defendant was closely assisted by counsel in determining the voluntariness of a plea. Here, the record contains no hint of any coercion, and it makes apparent the direct and substantial participation of appellant's counsel in his plea decision. Consequently, we find that appellant's claim that his lack of knowledge about the charges against him made his plea involuntary must fail.

*Factual Sufficiency*

Appellant's last Rule 11 claim is that his plea is invalid because the district judge did not develop a sufficient factual basis of his guilt before accepting the plea.[11] Appellant specifically argues that a sufficient basis in fact is not presented on the record because the district judge neither heard testimony relating to his guilt nor sufficiently developed the record by other types of proof. This claim, too, must fail.

 In *United States v. Antone*, 753 F.2d 1301, 1305 (5th Cir.1985), we stated, "To support a guilty plea the prosecutor must present evidence to the subjective satisfaction of the district court which indicates that a defendant actually committed the offense to which he is pleading guilty." This analysis cannot be applied in a vacuum, however, but must depend on the facts and circumstances present in each case. *See Dayton, supra,* at 938. Thus, we must now evaluate, using only the record, *see Coronado, supra,* at 172, the facts presented to support appellant's plea.

 The record reflects that the district judge properly established that there was a factual basis for the plea as mandated by Rule 11(f). When asked if there were any changes he would like to make just after

the facts were recited to him, appellant replied in the negative.[12] *See United States v. Davila,* 698 F.2d 715, 717–18 (5th Cir.1983). Further, the charge was read before the court and appellant, and was thus entered into the record, *see* note 7, *supra,* and we have held that this may provide factual support for a guilty plea. *Antone, supra,* at 1305. Lastly, the appellant signed a factual resume which included facts that would have been necessary for conviction under the charge and presented this to the court, *see* note 9, *supra.* With these matters reflected by the record, we find that the district judge had a sufficient factual basis to accept appellant's guilty plea.

Having rejected each of the appellant's contentions, we affirm the judgment of the district court.

AFFIRMED.

---

11. Rule 11(f) provides:
 "**(f) Determining Accuracy of Plea.** Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

12. The following colloquy appears in the record of appellant's rearraignment after the government read into the record the "Factual Resume", *see* note 9, *supra.*

"THE COURT: Is that what happened?
"THE DEFENDANT GUICHARD: Yes, Your Honor.
"THE COURT: Are there any corrections that should be made in that factual statement that you know of from your conversation with your client?
"THE DEFENDANT GUICHARD: No.
"MR. WILLIAMS [defense counsel]: No."