KING, Circuit Judge,
dissenting:
I would affirm Reggie’s guilty plea, conviction, and sentence.
Specifically, I would find — unlike the majority — that the district court’s failure to ask Reggie in haec verba about the voluntariness of his guilty plea during its plea colloquy was harmless. To put the plea colloquy into context, the district court here was faced with an uncomplicated case involving one defendant indicted on five counts of wire fraud arising out the same general scheme. Reggie was originally indicted in August 2013, and his superseding indictment occurred in February 2014. However, the district court was continually faced with delays in setting the trial date. After continuing the trial date three times over several months — twice on Reggie’s motion — and setting the trial date for October 20, 2014, the district court granted another continuance following Reggie’s stroke on October 6 and set a new trial date of October 27. While the district court was willing to continue the case again if Reggie provided medical documentation regarding his cognitive or physical limitations to testify or prepare for trial as a result of his stroke, this evidence was never presented. Moreover, the medical evidence that the court did have about Reggie’s condition showed “only minimal restrictions [on his] daily activities.” Thus, the district court continued to prepare for Reggie’s trial on October 27, until Reggie indicated that he would plead guilty in court on that date. At the resulting proceeding on October 27, the district court engaged in an extended plea colloquy aimed at ascertaining whether Reggie’s plea was knowing and voluntary in the aftermath of his stroke. And while the district court did not specifically ask Reggie about the voluntariness of his plea, it ultimately found, based on Reggie’s answers to its questions, that “[Reggie was] able to understand and that [he] knowingly and voluntarily entered into [the] plea.”
*252 The majority now asserts that the failure to specifically ask Reggie about the voluntariness of his plea is not harmless because it should have been apparent that Reggie’s medical condition prevented him from communicating effectively, thereby pressuring him into pleading guilty. However, I would find that this omission is harmless for two reasons. First, neither Reggie nor the majority suggests how Reggie’s guilty plea would have changed had he been specifically asked about volun-tariness. See United States v. Johnson, 1 F.3d 296, 302 (5th Cir.1993) (determining harmless error by “focus[ing] on whether the defendant’s knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty”) (emphasis added).[1]
Second, and more important, the district court record shows that the failure was harmless. In particular, the record demonstrates that: (1) the district court engaged in a lengthy plea colloquy where it deliberately asked Reggie questions to determine whether his plea was knowing and voluntary; (2) Reggie’s answers at the plea colloquy did not demonstrate a lack of voluntariness; and (3) Reggie never raised the issue of coercion or involuntariness prior to or during the plea colloquy. Although the district court never expressly discussed the voluntariness requirement of Federal Rule of Criminal Procedure 11(b), it asked a number of questions during the October 27, 2014, plea colloquy that — according to the court — were designed “to make sure that [Reggie] understood] the nature of [the] proceedings ... and that [he was] intelligently and knowingly entering into th[e] plea.” Among other questions, the district court asked Reggie about his background, his representation by counsel, the charges against him, whether his medication interfered with his ability to understand the proceedings, and the extent of his mental functioning — including his ability to manage his finances.
During this line of questioning, Reggie’s answers did not demonstrate that he was pleading involuntarily or that he was unable to comprehend or testify at the proceeding. Reggie answered questions regarding his background, explained the charges against him, responded negatively when asked if his medications interfered with his ability to understand the proceedings, and responded affirmatively when asked if he could manage his financial affairs.[2] The majority asserts that Reggie exhibited “obvious communication issues ... during his plea hearing,” but the majority is improperly inferring this point from a few awkward statements made by Reggie, rather than looking at the entire record. A full review of the record shows no statements by any party during the plea colloquy observing or voicing an objection to any communication issues by Reggie. In fact, Reggie was able to speak on his own behalf and even objected to part of the government’s factual basis for *253 his guilty plea during the plea colloquy. Moreover, while the majority asserts that medical records submitted to the district court should have made clear Reggie’s inability to testify, the district court repeatedly asked for, but never received, medical evidence regarding Reggie’s cognitive or physical limitations to testify or prepare for trial.[3]
*252 COURT: Are you able to attend to you own finances since your stroke?
THE DEFENDANT: I only have my left-hand to push.
COURT: Okay. But you are — if you have somebody to assist you, you can understand your checkbook and your balance and you can pay your bills and that kind of thing?
THE DEFENDANT: Yes.
*253 Although Reggie now argues that he felt coerced to plead guilty because of his medical condition, this was never raised before or during the plea colloquy.[4] See United States v. Guichard, 779 F.2d 1139, 1146 (5th Cir.1986) (finding that voluntariness was not undermined because “the record contain[ed] no hint of any coercion”). The majority, for its part, now suggests another form of coercion in that the district court may have pressured Reggie to plead guilty by informing him, via e-mail, that the trial would commence on October 27, 2014, if he did not plead guilty that day. The majority mischaracterizes the e'-mail and its context. The district court informed Reggie that a jury would be on stand-by and the trial would commence on October 27, because the actual trial had been rescheduled for October 27. Far from a form of judicial coercion or pressure, the district court was informing Reggie that the trial would continue as originally planned if he did not plead guilty. In fact, in light of the numerous delays involving the trial date, it appears that the district court was attempting to set a definite trial date after Reggie failed to provide medical evidence to justify another continuance.
Notably, this court has held that “[t]he fact that [a district] court did not expressly use the precise word ‘voluntary’ when addressing [a defendant] does not render the [Rule 11] proceedings insufficient.” Guichard, 779 F.2d at 1145. Instead, this court has looked to whether “the record shows that [a district] court ascertained from [the defendant] that the plea was in substance voluntary.” Id. “For a plea to be knowing and voluntary, ‘the defendant must be advised of and understand the consequences of the [guilty] plea.’” United States v. Gaitan, 954 F.2d 1005, 1011 (5th Cir.1992) (alteration in original) (quoting United States v. Pearson, 910 F.2d 221, 223 (5th Cir.1990)).
Given the record, I would conclude that the district court’s failure to specifically ask Reggie in haec verba about voluntariness was harmless. The district court engaged in a detailed plea colloquy with Reggie aimed at determining whether he was pleading knowingly and voluntarily, and it appropriately concluded that Reggie’s guilty plea met both requirements. I therefore would not second guess the district court’s fact-bound conclusion on appellate review. I respectfully dissent.

. Reggie's main argument on this point is that, had he been specifically asked about the voluntariness of his plea, he would have freely told the court that he was pleading guilty because he did not believe he could testify at trial. However, he still fails to demonstrate how his guilty plea would have changed had this exchange occurred.

. Although the majority notes Reggie's statement, "I only had my left-hand to push,” in response to the court’s questions regarding his finances, it omits the full exchange:

. Although Reggie submitted records establishing his stroke diagnosis and evidence of subsequent appointments, the district court, as early as October 9, 2014, specifically asked for medical evidence of his ability to be present for trial that Reggie never proffered. Furthermore, the district court, when examining the evidence Reggie presented, noted that no records or reports clarified that Reggie’s participation at trial would be life threatening. While the majority states that Reggie’s inability to testify or assist in his own defense was confirmed by a neurologist’s assessment that Reggie was “[ujnable to speak due to brain lesion,’’ this assessment was made on October 29, 2014, and was never presented to the district court during or prior to the plea colloquy on October 27.

. As the majority recognizes, Reggie only argued that he felt coerced to plead guilty when he moved to withdraw his guilty plea — a motion filed seven months after Reggie initially pleaded guilty.