**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 95-20651

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MARCUS DAMONE HENRY,

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Texas(Houston Division)

May 8, 1997

Before POLITZ, Chief Judge, and REAVLEY and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

The issues presented are whether the district court, in accepting defendant's pleas of guilty to conspiracy to possess more than 50 grams of cocaine base with intent to distribute and possession of cocaine with intent to distribute, 21 U.S.C. §§ 841(a)(1)(A), 841(b)(1)(A), 846 and 18 U.S.C. § 2, varied from the procedures required by Federal Rule of Criminal Procedure 11, and if so, whether the variance affected the substantial rights of the defendant.  We affirm.  After reviewing the transcript of the Rule 11 hearing we conclude that the district court (1) complied with the procedure required by FED.R.CRIM.P. 11(d) to insure that the

pleas were voluntary; and (2) any variance from its duty to advise defendant as to his rights to confront and cross-examine witnesses against him, FED.R.CRIM.P. 11(c)(3), and as to the potential admissibility of his statements made in the Rule 11 proceedings in a perjury prosecution, FED.R.CRIM.P. 11(c)(5), did not affect the defendant's substantial rights.

BACKGROUND

On January 24, 1995, a narcotics officer with the Houston Police Department received information from a reliable informant that Henry had offered to sell two kilograms of cocaine. As a result of receiving this information, the undercover officer arranged to buy the cocaine from Henry for $17,500 a kilogram. The officer met Henry and was shown 36 "cookies" of crack cocaine in a car trunk. Henry was arrested and 940.6 grams of 80.8 percent pure crack cocaine was recovered from the trunk of a car.

Henry was indicted on February 27, 1995 with conspiracy to possess more than 50 grams of cocaine base with intent to distribute (Count 1) and possession of cocaine base with intent to distribute (Count 2). Henry was not charged, as his co-conspirator, with knowingly using a firearm during and in relation to the drug-trafficking crimes. 18 U.S.C. § 924(c)(1). At his rearraingment hearing Henry pleaded guilty to both counts. He was subsequently sentenced to 168 months imprisonment, followed by a 60-month term of supervised release, and fined $10,000. The sentence reflects a three-level reduction for acceptance of responsibility.

2

At the Rule 11 hearing, the Government's attorney provided the following factual basis to support Henry's guilty pleas:

> On Wednesday, January 24, 1995, Houston Police Department [HPD] narcotics officer Don LeBlanc and an HPD confidential informant [CI] negotiated via telephone and in person to purchase two kilograms of crack cocaine for $17,500 each.
>
> On January 24, 1995, an HPD CI contacted HPD narcotics officer Don LeBlanc and advised LeBlanc that he or she knew of individuals who were capable of supplying two kilograms of crack cocaine.
>
> At approximately 1300 hours the CI met with LeBlanc and the CI paged a black male later identified as Marcus Damone Henry.
>
> Henry subsequently returned the call and negotiated with LeBlanc and stated he was ready to deliver the two kilograms of crack cocaine.
>
> Henry further requested that LeBlanc and the CI meet him at a store located at Bellfort and Mykwa [Streets] to conduct a transaction.
>
> Moreover, Henry also told Officer LeBlanc that "my people will have the two kilograms of cocaine at the store when you arrive." Henry further stated to Officer LeBlanc that he would be waiting in front of the store wearing red clothing.
>
> Prior to LeBlanc and the CI arriving at the story to meet Henry HPD narcotics officers established surveillance at area of Bellfort and Mykawa [sic]. Officer LeBlanc and the CI arrived at approximately 1350 hours and conversed with Henry.
>
> When he told officer LeBlanc that the cocaine was at his residence located behind the store, an unknown black male further described as five-eight, approximately 22 years of age approached Henry. Henry asked this person was it okay to give officer LeBlanc the crack cocaine. This person stated that it was okay and further advised Henry that he would meet him and Officer LeBlanc at the residence as soon as he came out of the store
>
> Officer LeBlanc then saw this person enter the store. Henry escorted Officer LeBlanc to Henry's residence at 6155 Bellarbor, Houston, Texas. Once at this residence, Henry and Officer LeBlanc met with another black male who was later positively identified by Officer LeBlanc as Dundre Robertson.
>
> Henry obtained the keys from Robertson to a green Chevrolet Monte Carlo which was parked in the driveway of the residence. Robertson said the quality of the crack cocaine was good and further stated that all 36 cookies of crack cocaine were present inside the above-mentioned Chevrolet Monte Carlo.
>
> Robertson stood back as to stand guard as henry proceeded to open the trunk of the Chevrolet Monte Carlo. The person arrived at the residence as Henry was about to show Officer LeBlanc the crack cocaine.

LeBlanc spoke to this person. Robertson stated to LeBlanc that this person was very cool. Henry reached into the trunk of the vehicle and displayed a dark-colored plastic bag containing a white plastic bag which further contained 12 small pink pouches. Each pouch contained three cookie-shaped substances which Henry and Robertson represented to Officer LeBlanc as being crack cocaine.

Officer LeBlanc then asked Henry and Robertson where were the other kilograms of crack-cocaine -- excuse me -- cocaine. Henry stated that someone would bring the other kilogram of cocaine to Henry's residence in 10 minutes.

The prearranged bust signal was given by the officer, and the surveillance team officers attempted to arrest Henry and Robertson. While Officer Mark Ahn was attempting to arrest Robertson, it escalated to a struggle in which Robertson attempted to remove a weapon from his person, without success.

Once the arrest was effected, Officer Ahn received a 9mm Baywood semiautomatic handgun from the front wasteband of Robertson's trousers. The weapon was loaded, one round was in the chamber, and the hammer of the weapon was loaded -- strike that -- cocked -- and weapon was in the cocked position.

Officer Ahn also recovered 1200 in U.S. currency from the person of Robertson. While the officers were attempting to arrest these individuals, the John Doe escaped without being apprehended.

Henry ran southbound from the scene and was pursued by HPD officers. Henry jumped over several fences and ran through the yards of several residences. Henry was arrested after he kicked in the door of the residence located at 6207 Bellcrest and fought with the HPD officer. The resident of this house did not know Henry and struggled in an attempt to remove him from the house.

Henry and Robertson were subsequently transported to the HPD city jail by HPD officers. Officer LeBlanc later field tested the substance seized, which showed positive results for the presence of cocaine. The gross weight of the crack cocaine seized was approximately 967 grams.

Henry agreed that the factual basis was true.

ANALYSIS

A plea of guilty is a "grave and solemn act to be accepted only with care and discernment...." *Brady v. United States*, 397 U.S. 742, 748 (1970); *See Boykin v. Alabama*, 395 U.S. 238, 243-244 (1969). *Kercheval v. United States*, 274 U.S. 220, 223 (1927). A defendant has a Fifth Amendment right not to plead guilty and a

4

Sixth Amendment Right to demand a jury trial. *United States v. Jackson*, 390 U.S. 570, 581 (1968); *Boykin*, *id*. In federal court Rule 11 makes elaborate provision to insure that the plea is made voluntarily and intelligently, *i.e.*, that the defendant understands the nature of the charge, his rights, the consequences of the plea, and that there is a factual basis for the plea. *See* 1 WRIGHT, FEDERAL PRACTICE AND PROCEDURE, § 171.1 at 561-62.

FED.R.CRIM.P. 11, in pertinent part provides:

**Rule 11. Pleas**

\*\*\*

**(c) Advice to Defendant.** Before accepting a plea of guilty . . . , the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

\*\*\*

(3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination; and

\*\*\*

(5) if the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant has pleaded, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

\*\*\*

**(d) Insuring that the Plea is Voluntary**. The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the

5

defendant or the defendant's attorney.

***

**(h) Harmless Error.** Any variance from the procedure required by this rule which does not affect substantial rights shall be disregarded.

This court which for a time persisted in its earlier view that some Rule 11 errors require automatic reversal, has now overruled many of its earlier decisions on this point and held that all failures to comply with Rule 11 are to be tested by the Rule 11(h) "substantial rights" standard. *United States v. Johnson*, 1 F.3d 296, 297 (5th Cir. 1993) (en banc) ("[W]hen an appellant claims that a district court has failed to comply with Rule 11, we shall conduct a straightforward, two-question 'harmless error' analysis: (1) Did the  sentencing court in fact vary from the procedures required by  Rule 11, and (2) if so, did such variance affect substantial rights of the defendant?").

A.  VOLUNTARINESS

The decisions of this court and others antedating Rule 11(h) and *United States v. Johnson* continue to provide helpful guidance in determining whether a district court has performed its Rule 11 duties in general and, in particular, whether it has varied from the Rule's requirements to insure that the plea is voluntary.

The Supreme Court has accepted as the standard of voluntariness of guilty pleas, a formulation devised by the late Judge Elbert P. Tuttle, formerly of this court:

> "A plea of guilty entered by one fully aware of the direct
> consequences, including the actual value of any commitments

6

made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970) (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), rev'd on other grounds, 356 U.S. 26 (1958).

As this court has observed, no simple or mechanical rule can be stated to guide the district court in applying Rule 11(d) to insure that the plea is voluntary. *United States v. Dayton*, 604 F.2d 931, 938 (5th Cir.), *cert. denied,* 445 U.S. 904 (1979). However, helpful general observations have been offered: The "more complex or doubtful the situation as [to whether the plea was voluntary] ... the more searching will be the inquiry dictated by a sound judgment and discretion." *Id.* Further, "should the defendant, when addressed by the judge, give any serious indication that the plea is a result of force or threats or of promises apart from a plea agreement, the fifth amendment is immediately and directly implicated, and a most searching inquiry into these matters must follow." *Id.*

As for the rule's several injunctions that the trial judge personally address or inform the defendant of matters, a colloquy conducted exclusively by the judge is not required, although it is the best practice. *Id.*

7

It will usually suffice, however, that the judge dominate the inquiry and involve himself personally in it .... We do not think the spirit or the letter of the rule require that the judge be sole orator or lector, especially where multiple charges and defendants are concerned. Judges, too, get sore throats.

*Id.*

The courts in general have been clear that Rule 11 "is not to be read as requiring a litany or other ritual which can be carried out only by word-for-word adherence to a set 'script'." Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, October 1981, p. 26 reprinted in 91 F.R.D. 289, 326. *See also* 1 WRIGHT, FEDERAL PRACTICE AND PROCEDURE, § 178, at 673 "Just as 'mere ritual does not suffice for compliance with Rule 11,' *Dayton*, 604 F.2d at 943 (5th Cir. 1979), so too 'ritualistic compliance is not required.'" *United States v. Scharf*, 551 F.2d 1124, 1129 (8th Cir.), *cert. denied,* 434 U.S. 824 (1977). Accordingly, as we have previously indicated, when the inquiry into the voluntariness of the plea "has been reasonably implicated in the Rule 11 colloquy, we will examine its treatment to determine whether it has been sufficiently exposed to inquiry and determination. If so, we will not disturb the result." *Dayton*, 604 F.2d at 940; *see also United States v. Abreo*, 30 F.3d 29, 31 (5th Cir. 1994), *cert. denied*, 513 U.S. 1064 (1995).

Applying these precepts, we conclude that the district court did not vary from the requirements of Rule 11(d) that the judge

insure that the plea was voluntary.  Clearly revealing that Henry's plea was voluntary the following transpired in the Rule 11 colloquy:

THE COURT: Counsel, let me ask you whether or not you had sufficient opportunity to investigate the case and are you satisfied that Mr. Henry understands the nature of the charges pending against him?

MR. TURNER [DEFENSE COUNSEL]: Your honor we did hire a private investigator.  We investigated the case.  We talked with witnesses.  We discussed that thoroughly with Mr. Henry.  We discussed any possible defenses of entrapment, and it was his opinion and our opinion that he fully understood the nature of the circumstances of the case and that he **voluntarily** wishes to plead guilty.  (emphasis added)

THE COURT:  Mr. Henry, has [your attorney] spoken truthfully or correctly as you understand the facts and circumstances, or is there anything about what he said you would want to change?

DEFENDANT:  I understand.

THE COURT:  What he said is essentially correct?  Is that what you are saying?

DEFENDANT: Yes, sir.

***

THE COURT:  Your attorney has indicated to me he talked to you about any meritorious defenses you might have or any possibilities that the case would support going to trial, that is, there might be some colorful basis for you to try this

9

case. He indicated he talked to you about that and determined that it is in your best interest to enter a plea of guilty in this case. Is it true that he has talked to you about it?

DEFENDANT: Yes. He has.

THE COURT: And it's your decision as well as his, and on his advise (sic) and your understanding that you enter pleas of guilty to these two counts; is that correct?

DEFENDANT: Yes, sir.

***

Moreover, at the Rule 11 hearing Henry testified that he had attained a general equivalency diploma, could read and write English, had no mental deficiencies, and was not, at any time, addicted to or under the influence of drugs or alcohol. He recited the events leading up to his arrest and admitted that he knowingly violated the law by participating in a drug transaction. The Rule 11 transcript indicates that Henry was fully aware of the direct consequences of his plea. The case did not present any complex or difficult situations. The record is devoid of any evidence suggesting that Henry's guilty plea was induced by threats, misrepresentations, or improper promises. Henry does not argue that his plea in fact was involuntary or resulted from any form of coercion. The court addressed the defendant directly, dominated the inquiry and involved itself personally in a colloquy with the defendant and his attorney. The district court's partial reliance in its colloquy with the defendant on a brief reference to the court's colloquy with the defendant's attorney, which occurred

10

during the same proceeding in the defendant's presence, did not constitute a variance from the letter or the spirit of Rule 11. Because the sentencing court did not vary from Rule 11 in performing its duty to insure that Henry's plea was voluntary, we do not reach the second question of whether a variance affected his substantial rights. *See United States v. Johnson*, 1 F.3d 296, 298 (5th Cir. 1993)(en banc).

B.   OTHER ALLEGED VARIANCES BY THE DISTRICT COURT

Henry also assigns as error the district court's failures to advise him of his right to confront and cross-examine witnesses who testified against him, FED.R.CRIM.P. 11(c)(3), and to warn him of the potential use against him in a perjury prosecution of his statements in the Rule 11 proceedings, FED.R.CRIM.P. 11(c)(5).

The defendant's arguments and the Rule 11 hearing transcript do not suggest any way in which the district court's failures to advise him of his confrontation and cross-examination rights and to warn him of the potential for perjury evidence in his answers creates any reasonable doubt as to the voluntariness and intelligence of the plea. Accordingly, we conclude that Henry's substantial rights were not affected under the particular circumstances of this case. *See United States v. Law,* 633 F.2d 1156 (5th Cir.), *cert. denied*, 451 U.S. 992 (1981); *United States v. Almaguer,* 632 F.2d 1265 (5th Cir. 1980); *United States v. Caston*, 615 F.2d 1111 (5th Cir.), *cert. denied*, 441 U.S. 950 (1980). *Cf. United States v. Gastelum*, 16 F.3d 996 (9th Cir. 1994). In a different case, however, the district court's failure to

perform either of these duties could prove to be harmful, reversible error. Consequently, these duties should never be shirked.

## CONCLUSION

For the foregoing reasons, Henry's conviction and sentence are AFFIRMED.