EDITH H. JONES, Circuit Judge,
dissenting:
With due respect, my colleagues’ conclusion that a single technical Rule 11 omission by the district court is not harmless error returns us to the law as it was nine *227 years ago, before this court took Rule 11(h) seriously.[1] Until the en banc decision in United States v. Johnson, 1 F.3d 296-302, (5th Cir.1993) (en banc), this court evaluated Rule 11 compliance in terms of three “core concerns,” the omission of any one of which would automatically result in the vacatur of a guilty plea. United States v. Dayton, 604 F.2d 931 (5th Cir.1979) (en banc). One of Dayton’s, “core concerns,” the one at issue here, was that the court must address a defendant concerning the nature of the charge against him. Fed.Crim. Rule Proc. 11(c)(1). Johnson involved another of the core concerns, but this court rejected Dayton’s per se approach in favor of the harmless error analysis specified by Rule 11(h). The Johnson test, given lip service by the majority, identifies reversible Rule 11 error only if the court’s non-compliance affected the defendant’s substantial rights such that his “knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty.” 1 F.3d at 302.
The majority opinion dwells on the trial court’s admitted non-compliance with Rule 11, but it never discusses how the appellants’ substantial rights were violated by the court’s failure to read them their indictments or otherwise explain the charge of illegal reentry. 18 U.S.C. § 1326. There is no basis in the record for a conclusion that, had appellants been specifically informed at the plea colloquy of the nature of a § 1326 violation, they would not have pled guilty and would have insisted on going to trial.
The majority assert that the “sole” basis for a finding of harmless error is the Assistant U.S. Attorney’s recitation of the factual basis of the charge at the guilty plea colloquy. This assertion suffers from two flaws. It misstates Johnson, which holds that the entire trial court record must be consulted to evaluate the effect of a Rule 11 error. 1 F.3d at 302. It also misapprehends the record. These appellants certainly knew what charge they were pleading guilty to.
The crime of illegal reentry is not recondite. It consists of a person’s being found in the United States without the permission of the Attorney General after having been previously deported. All four appellants responded affirmatively to the court’s introductory query whether they wished to plead guilty. The factual resumés recited by an AUSA at the court’s request embody the simple elements of a § 1326 violation for each appellant.
As to Garcia-Luna, the AUSA stated:
Mr. Garcia Luna is a native and citizen of Mexico, Your Honor. He was encountered by Border Patrol wading the — or crossing the Rio Grande River at a location near El Cenizo, Texas, at about 10:00 in the morning on March the 9th, 2000, entering without immigration inspection. He has — records show that he has been previously deported from Laredo on February the 12th, 2000. He has — records show that he has not applied for or received permission from the attorney general to re-enter the United States. We believe Mr. Garcia is an aggravated felon. His criminal history includes a 1995 conviction for sale of *228 cocaine. He was sentenced to 12 years in that offense.
Garcia-Luna admitted his crime in the plea colloquy.
The facts pertaining to Torres-Rodriguez, as recited by the AUSA, are as follows:
The defendant is a citizen and national of Mexico. On March 29th of this year he was apprehended by Border Patrol at the river banks here in Laredo, Texas. He had just crossed. On June 24, 1999, he was deported back to Mexico through Laredo. This was subsequent to several misdemeanor convictions for theft out of Travis County. It also appears that he was arrested for a burglary of a habitation. I don’t know what has happened with that case, Your Honor. I can’t tell from my file. He has not received permission to re-enter or reapply for readmission to enter the United States from the attorney general.
Torres admitted that the factual basis was true.
The factual basis for Mata was given by the government:
His true name, Your Honor, is Turru-viartez-Sanchez. He is a native and citizen of the Republic of Mexico. He was apprehended by Border Patrol agents performing line-watch duty near Laredo Community College on the 26th of March of this year at about 10:00 p.m. just at the time of this entry. He was previously deported through Laredo on the 12th of October of 1999. And he had neither applied for nor received permission of the attorney general to reenter after deportation.
We believe he qualifies as an aggravated felon. His criminal history includes a 1992 aggravated assault and a 1995 murder intending serious bodily injury for which he served time in the Texas Department of Criminal Justice Institution.
Mata admitted the truth of the facts concerning his reentry.
The Government gave the following factual basis for Lujano-Perez:
Mr. Lujano-Perez is also a native and citizen of the Republic of Mexico, Your Honor. He was apprehended on the 30th of March of this year at 11:00 p.m. by Border Patrol agents. They were following up on a tip that the defendant was an illegal alien living in the Santa Fe subdivision of Laredo, Texas, and working at a restaurant called Las Asa-das. He confirmed his illegal status and admitted he had last entered the ■ United States on the 2nd of May of 1999 . by making a false claim of United States citizenship at the port of entry, bridge number two, here in Laredo. He was last deported on the 29th of April through Laredo and has neither applied for nor received permission of the attorney general to re-enter after that deportation. [emphasis added.]
We do believe he qualifies as an aggravated felon. His criminal history includes a battery for which he received a 15-year sentence and a number of prior crimes for which the dispositions are not known by the investigating officers.
Lujano acknowledged the truth of the facts regarding his illegal entry. Based on the simplicity of the charge, and the appellants’ understanding, emphasized by the court, that they could seek clarification at any time, it is a close question whether these factual resumés alone sufficiently identified the nature of the charge. This court has noted that, “[n]either Rule 11 nor the case law specifies the minimum that the district court must do to ‘inform the defendant ... of the nature of the charge’ ”. United States v. Reyna, 130 F.3d 104, 110 (5th Cir.1997).
*229 The record is rife with additional confirmation of the appellants’ knowing intent to plead guilty to the crime with which they were charged. All of the appellants were represented by the Federal Public Defender. This court should be able to rely on the public defender’s expertise in advising their clients. We should assume that where, as here, each defendant admitted to the judge that he committed the acts that form the basis of an illegal re-entry, he did so on the advice of competent counsel. None of the defendants raised a peep when the court asked if they were satisfied with their counsel and if they were under any compulsion to plead guilty. In fact, defense counsel raised no objections to the factual resumés recited by the .AUSA’s, to the clients’ assent to the resumés, or to the crime summaries contained in each appellant’s PSR. No defense counsel called the trial court’s attention to its omissions from the precise Rule 11 “script.” More to the point, no defense counsel moved in the trial court to withdraw his client’s guilty plea on the basis of ignorance or involuntariness.
Finally, each of the defendants appended an explicit admission of guilt to his PSR in order to qualify for a 3-level reduction in the sentencing guidelines, a reduction granted by the court.[2] Since none of the defendants received anywhere near the maximum 20-year statutory sentence for his admitted offense, and all were sentenced at the bottom of the guidelines range, there is no objective basis for dissatisfaction with the outcome of the prosecution. Indeed, it cannot be emphasized too strongly that none of the appellants contends he would have insisted on going to trial if he had been explicitly informed by the court of the “nature” of a section 1326 charge.
Rather than examine the objective circumstances surrounding the trial court’s errors, the majority express fear that allowing the factual resumé to fulfill the function of the nature-of-charge explanation will “obliterate” a particular requirement of Rule 11. But their holding threatens to “obliterate” Rule 11(h) and the Johnson harmless error test: harmless error comes into play whenever a trial court has “obliterated” some facet of Rule 11.
The majority suggest in a footnote that their analysis comports with the Advisory Committee Notes to Rule 11, which eschew a harmless error claim where “the government rests upon nothing more than the assertion that it may be ‘assumed’ defendant possessed such understanding [of the charge against him] merely because he expressed a desire to plead guilty.” Majority Opn. at n. 5, citing Fed.R.Crim.P. 11 (advisory committee notes to 1983 amendment). But as has been demonstrated, the government does not rely solely on these appellants’ expressed desire to plead guilty, but upon many other indicia of their knowledge and understanding that they committed the federal crime of illegal re-entry. The same Advisory Committee Notes also caution that Rule 11 does not prescribe a “litany or other ritual which can be carried out only by word-for-word adherence to a set ‘script.’ ” Id. See also United States v. Henry, 113 F.3d 37, 41 (5th Cir.1997) (Rule 11 does not require ritual adherence to its precise contours for a guilty plea to be upheld).
*230 This court has frequently addressed the sufficiency of Rule 11 colloquies following Johnson. In a few decisions, we have found that a defendant’s substantial rights were violated by errors such as serious, prejudicial misinformation about the punishment range or the omission of a minimum prison term.[3] No post-Johnson case I have found, published or unpublished, isolates one technical omission and holds it a reversible error without assessing the objective, likely effect on the appellant’s willingness to plead guilty in light of the whole trial court record. On the contrary, even a series of technical omissions has been found harmless under the circumstances. United States v. Cuevas-Andrade, 232 F.3d 440 (5th Cir.2000). And in United States v. Vasquez-Bernal, 197 F.3d 169 (5th Cir.1999), where the trial court failed to expressly advise an illegal re-entrant of the applicable range of punishment, this court held that without proof, or even an allegation, that the omission affected his guilty plea, the Rule 11 complaint was meritless. See also United States v. Morales-Sosa, 191 F.3d 586, 587-88 (5th Cir.1999) (“Sosa has never alleged that full compliance with Rule 11 would have affected his decision to plead guilty, nor does the record support such a suggestion.”).
The purpose of these appeals is difficult to discern. While I heartily agree that it is better practice for the district court to adhere closely to Rule 11, I also find it inconceivable that these appellants will not plead guilty upon remand. The public defender has made no effort to demonstrate substantial harm to these appellants’ rights from the trial court’s technical Rule II errors. Moreover, we were assured by an AUSA at oral argument that procedures are now in place to advise the district court of omissions in Rule 11 colloquies. As we said in Vasquez-Bernal, “the federal public defender must have better things to do.” I respectfully DISSENT.

. Appellants also complain that the district court omitted from its guilty plea advice other information required by Rule 11, e.g. the defendant's right to plead not guilty and proceed to a jury trial, to counsel at trial, to confront witnesses, and not to incriminate himself. The majority do not discuss these omissions. I would find them insufficient to overturn the guilty plea, based on the whole record and the analysis in United States v. Cuevas-Andrade, 232 F.3d 440 (5th Cir.2000).

. One example of these .statements was executed on behalf of Lujano-Perez:
I, Encarnación Lujano-Perez, admit that I am an alien that entered the United States without obtaining permission from the Attorney General of the United States. I admit that I was deported before I re-entered the United States. I was found by a U.S. Border Patrol Agent in Laredo, Texas.
And at sentencing, Garcia-Luna apologized for having "entered illegally into the country.”

. See United States v. Herndon, 7 F.3d 55 (5th Cir.1993); United States v. Whyte, 3 F.3d 129 (5th Cir.1993); see also United States v. Suarez, 155 F.3d 521 (5th Cir.1998) (defendant's statement during rearraignment that he was "only guilty of possession” suggested he did not understand that he was charged with possession of cocaine with intent to distribute).