# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30568

United States Court of Appeals
Fifth Circuit

**FILED**

May 27, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee

v.

RAYMOND CHRISTOPHER REGGIE,

　　　　Defendant – Appellant

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:13-CR-111-1

Before KING, SOUTHWICK, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:*

After Raymond Christopher Reggie pleaded guilty to five counts of wire fraud, the district court sentenced him to 135 months of imprisonment, two years of supervised release, and ordered him to pay restitution. Reggie now appeals, contending, inter alia, that the district court erred in failing to determine whether his plea was voluntary as required by Federal Rule of Criminal Procedure 11(b)(2) in a way that violated his substantial rights. We

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30568

agree, and accordingly VACATE the judgment and REMAND for further proceedings.

## I. Background

On August 14, 2013, the Government filed an indictment charging Reggie with five counts of wire fraud in violation of 18 U.S.C. § 1343 for allegedly submitting false advertising expenses to his automobile dealership clients.[1]  The Government and Reggie then engaged in extensive pre-trial motions practice,[2] and Reggie's trial was ultimately set for October 20, 2014.

On October 14, Reggie filed a motion to continue his trial, stating that he had suffered a stroke on October 6, 2014, spent three days in an intensive care unit, and remained hospitalized.  The motion indicated that Reggie was unable to assist or prepare for trial with his attorneys, nor could he effectively testify at trial as planned.  Attached was a note from Reggie's physician, stating that Reggie suffered from the symptoms of a stroke, was undergoing physical, occupational, and speech therapy, and that he was "not able to prepare for or attend any legal proceedings."  The court granted a seven day continuance and rescheduled the trial for October 27.  Reggie's counsel objected to the trial date, arguing that Reggie's ability to testify was not known and that counsel would not be ready within a week.  The district court declined to change the trial dated unless Reggie's physician could attest in writing that he

---

[1] The Government also charged Reggie with seven counts of engaging in illegal monetary transactions in violation of 18 U.S.C. § 1957.  In a superseding indictment filed on February 20, 2014, these charges were dropped such that only the five counts of wire fraud remained.

[2] In addition to numerous evidentiary motions between the parties, on September 16, 2013, the district court granted Reggie's motion to designate the case as complex and to exclude time under the Speedy Trial Act, and granted Reggie a continuance.  The district court granted Reggie another continuance on November 26, 2013.  It also denied Reggie's motion to dismiss for improper venue on March 13, 2014, and denied Reggie's motion for disqualification and recusal on April 25, 2014.

was suffering from speech issues, cognitive issues, or was physically unable to be present for trial.

Reggie filed a subsequent motion on October 22, seeking a continuance of at least thirty days. Reggie's motion informed the court that he was to undergo outpatient surgery on October 22 to place a heart monitor in his chest, and begin outpatient therapy on October 24. It further stated that Reggie's neurological status could only be evaluated in detail after a neurological consultation scheduled for October 29—two days after the trial was set to begin—and that the letter attesting to Reggie's inability to participate at trial could be provided after this appointment. October 29 was the earliest Reggie could obtain this neurological assessment because his surgery on October 22 made an assessment that week unviable. The motion also noted that Reggie's speech was not yet normal, he was unable to drive, had difficulty reviewing evidence in preparation for the trial, and that he required assistance with preparing meals, bathing, getting dressed, and using the restroom. Attached were exhibits including a medical report showing Reggie's stroke diagnosis, a list of prescribed medications related to his stroke, and appointment confirmations for his scheduled heart surgery and neurological assessment.

The court denied Reggie's motion for a thirty-day continuance in an order entered on October 23. The court observed that the exhibits proffered by Reggie failed to show that Reggie's participation at trial would be life threatening, and failed to address Reggie's speech, cognitive or physical limitations as specifically ordered by the court. The court concluded that defense counsel had five months to prepare for trial and stated perhaps Reggie could attend his neurological assessment on Halloween, when the court intended to take a half day off.

On October 25, Reggie's counsel informed prosecutors by e-mail that Reggie would plead guilty to the wire fraud charges two days later, the day the

trial was scheduled to begin. After being notified of this proposed plea, the courtroom deputy advised Reggie's counsel that, "[the district judge] wanted counsel to be advised that should Mr. Reggie not enter a guilty plea for whatever reason Monday morning, the jury panel has been placed on stand-by and the trial will commence." On the morning of October 27, Reggie went before the district court and confirmed that he would plead guilty to all five counts of wire fraud without a plea agreement in place. The court acknowledged that Reggie was having difficulty speaking and that his speech was slow. It then went through a plea colloquy with Reggie. However, the court failed to specifically ask Reggie about the voluntariness of his plea. It also did not inform Reggie about his right to counsel, his privilege against self-incrimination, his right to testify and present evidence at trial, and his right to compel the attendance of witnesses. At the conclusion of the plea hearing, Reggie pleaded guilty to all five counts of wire fraud.

After Reggie replaced his previous defense counsel, he filed a motion to withdraw his guilty plea with the court on June 2, 2015. Reggie argued that he was pressured to plead guilty based on his inability to assist in his own defense without a continuance after he suffered a stroke. Reggie also maintained that his plea colloquy with the court was defective, as it varied from the requirements of Federal Rule of Criminal Procedure 11. Reggie argued that, in addition to other Rule 11 defects, the court failed to make inquiries about whether his plea was knowing and voluntary. He attached to the motion a medical report from his neurologist related to his October 29 neurological assessment, which stated that Reggie was "[u]nable to speak due to brain lesion."

On June 17, 2015, the court held a hearing on the motion to withdraw the plea, denied the motion, and proceeded to hold Reggie's sentencing hearing. In a written ruling, the court explained that based on the questions it had

asked Reggie during the plea hearing, Reggie had made a knowing and voluntary decision to plead guilty.  It further stated that the *Carr*[3] factors, which govern whether to grant a motion to withdraw a guilty plea, strongly pointed towards denying Reggie's motion.  With respect to defects in the plea colloquy, the court concluded that the errors were harmless.

The district court entered a judgment and sentenced Reggie to the high end of the applicable Guidelines range of 135 months in prison.  It also imposed two years of supervised release, and ordered Reggie to pay restitution in the amount of $1,217,657.36.  Reggie timely appealed.

## II. Discussion

We review challenges to the sufficiency of a plea colloquy de novo.  *United States v. Lujano-Perez*, 274 F.3d 219, 224 (5th Cir. 2001).  "Before accepting a plea of guilty . . . the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises. . . ."  FED. R. CRIM. P. 11(b)(2).  Where, as here, a defendant files a pre-sentencing motion to withdraw his guilty plea, an error under Rule 11 is preserved and subject to review under the harmless error standard.  *See United States v. Powell*, 354 F.3d 362, 367 (5th Cir. 2003).  "To determine whether a Rule 11 error is harmless (i.e., whether the error affects substantial rights), we focus on whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty."  *United States v. Johnson*, 1 F.3d 296, 302 (5th Cir. 1993).  In other words, we examine the facts and circumstances of the case to see if the district court's flawed compliance with Rule 11 can reasonably be viewed as a material factor affecting a defendant's decision to plead guilty.  *Id.*  In making this determination, we "may consult the whole record."  *United States v. Vonn*, 535

---

[3] *See United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984).

U.S. 55, 59 (2002). When a situation presents complexity or doubt as to whether a plea was voluntary, we will do a more searching inquiry as to whether Rule 11(b)(2) has been satisfied. *See United States v. Henry*, 113 F.3d 37, 41 (5th Cir. 1997). The burden rests on the Government to show that a Rule 11 error was harmless. *Vonn*, 535 U.S. at 62.

The Government does not dispute that the district court failed to specifically ask Reggie about the voluntariness of his plea, but instead claims that it has met its burden to establish that this violation of Rule 11(b)(2) was harmless. We disagree.

The record clearly shows that Reggie suffered a stroke on October 6, 2014, that required him to spend three days in an intensive care unit, and that his physician confirmed that his medical condition left him unable to prepare for or attend any legal proceedings. Subsequent medical records submitted to the district court further established Reggie's stroke diagnosis, the therapy he was undergoing as a result of his stroke, as well as his scheduled October 22 heart surgery that would prevent him from undergoing a neurological assessment until October 29. Nevertheless, on October 23, the district court denied his motion for a thirty-day continuance and determined that his trial would commence as scheduled on October 27.

In this fraud case involving advertising expenses (where numbers are important), Reggie's inability to communicate effectively as a result of his stroke was made apparent during his plea hearing. When asked what the current date was, Reggie responded "October, two seven"; when asked what year it was, he responded "one four"; when asked how old he was, Reggie responded "five three"; and when asked what year he was born, Reggie stated "six one." When the district court inquired as to whether Reggie was able to attend to his own finances, Reggie, a college-educated man, responded with "I only have my left-hand to push." When asked if he was able to go through

6

normal daily activities, he answered that "with a little help I can bathe. I can – I go to O.T. [occupational therapy] and I couldn't put the necktie on, I'm sorry." The court also asked Reggie if he knew what wire fraud meant, to which he responded, "I put the check in the bank and it went out of Louisiana and then made it fraud."

The obvious communication issues exhibited by Reggie during his plea hearing, buttressed by the medical evidence he provided to the court, helped substantiate his claims that he was unable to assist in his own defense during the relevant period and would be unable to effectively testify on his own behalf.[4]  *Cf. United States v. Graves*, 98 F.3d 258, 261–62 (7th Cir. 1996) (reversing the conviction of a defendant who suffered a stroke before pleading guilty because the district court failed to sua sponte order a competency hearing with testimony from a neurologist under 18 U.S.C. § 4241, and emphasizing that "[j]udges are not experts in assessing the effects of a stroke on mental functioning"); *United States v. Crosby*, 739 F.2d 1542, 1544–46 (11th Cir. 1984) (remanding for a competency hearing when the district court, even after a physician testified that defendant suffered from a neurological disorder and defendant's counsel expressed an inability to communicate effectively with the defendant, denied the defendant's motion for a continuance to undergo neurological testing).  Reggie's inability to testify on his own behalf or assist in his own defense was further confirmed by a neurologist's assessment of Reggie conducted on October 29 (two days after Reggie pleaded guilty), which stated that Reggie was "[u]nable to speak due to brain lesion."  Moreover, Reggie's communication struggles at the plea hearing stood in marked contrast to his

---

[4] *Cf. Godinez v. Moran*, 509 U.S. 389, 391 (1993) (holding that the competency standard for pleading guilty is the same as the competency standard for standing trial); *White v. United States*, 470 F.2d 727, 728 (5th Cir. 1972) ("We have no doubt that the level of competency required to enter a plea must be at least as high as that required to assist in defense. . . .").

No. 15-30568

lucidity at the plea withdrawal hearing around seven months later, where Reggie was able to clearly articulate his thoughts.[5]

While we need not and do not address whether Reggie's plea was involuntary or whether a competency hearing was required in this case, Reggie's medical condition undoubtedly created a "complex or doubtful . . . situation" that at least raised questions about the voluntariness of his plea, requiring a "more searching . . . inquiry" as to whether the requirements of Rule 11(b)(2) were satisfied. *Henry*, 113 F.3d at 41. This case is thus unlike the many harmless error cases where one omission from the Rule 11 colloquy is clearly inconsequential. *See e.g., United States v. Lara*-Castro, 561 F. App'x. 346, 349 (5th Cir. 2014) (affirming under plain error review where defendant was previously advised of his right to counsel).

The pressure imposed on Reggie to plead guilty by his medical condition and the denial of the continuance was intensified by the district court's actions. Faced with the prospect of going to trial despite his inability to communicate effectively, Reggie notified the district court that he was planning to plead guilty. The court responded by stating that "should Mr. Reggie not enter a guilty plea *for whatever reason* Monday morning, the jury panel has been placed on stand-by and the trial will commence." (emphasis added). We have

---

[5] At the plea withdrawal hearing, Reggie spoke at length about his recollection of the plea hearing and his recovery:

> Everyday I have gotten better. And it's frustrating, but you know, the doctors tell [me] and the therapists tell [me] that I'm ahead of schedule. It's just a long schedule, so as I started understanding better, you know, what I did and remembering actually issues of the courtroom that day and other things, you know, [my lawyer] kind of explained to me, "Do you remember this? Do you remember that?" I said, "No." . . .
>
> I felt I had a chance at life. I was very concerned that it really didn't matter because I didn't think that I [was] going to speak again. I didn't think I would walk again without a cane. And I'd beat it. I beat the stroke, I mean.

No. 15-30568

stressed the important prohibition against any form of judicial participation in or interference with a defendant's decision to plead guilty. *See United States v. Rodriguez*, 197 F.3d 156, 157–59 (5th Cir. 1999) (vacating a conviction and sentence when a district court denied a defendant's request for "more time" and implied to the defendant that it preferred a guilty plea).  The primary purpose of this bright-line rule is to "diminish[] the possibility of judicial coercion of a guilty plea, regardless whether the coercion would actually result in an involuntary guilty plea." *Id.* (citation omitted); *see also United States v. Hemphill*, 748 F.3d 666, 676 (5th Cir. 2014) ("[O]nce a court has exerted pressure on a defendant [to accept a plea] it is difficult, if not impossible, to undo the coercive effects of that pressure."); *United States v. Ayika*, 554 F. App'x 302, 309 (5th Cir. 2014) (noting that judicial involvement in a defendant's decision to plead guilty "makes it difficult for a judge to objectively assess the voluntariness of the plea" (quoting FED. R. CRIM. P. 11 advisory committee's notes (1974)).

In this case, Reggie moved to withdraw his guilty plea and thereafter testified that his medical condition and the district court's e-mail resulted in feeling coerced to plead guilty.[6] *Cf. Hemphill*, 748 F.3d at 674, 675 (noting that

---

[6] While the dissenting opinion makes much of the fact that Reggie never raised the issue of voluntariness before or during the plea colloquy, the Supreme Court has stated that in reviewing for harmless error, we "may consult the whole record." *Vonn*, 535 U.S. at 59. Here, in a written motion to withdraw his guilty plea, Reggie expressly objected on the grounds that his plea was involuntary and that the plea colloquy was defective under Rule 11(b)(2), thus preserving these errors for appeal. *See Powell*, 354 F.3d at 367.  Moreover, at the plea withdrawal hearing, Reggie had recovered from his stroke and testified:

> They said, either plead guilty. I think if I remember correctly it was, the jury is in the wing. You plead guilty and --- or you go to trial. That's it. No continuance. And I'm like, you know, I just – I can't take the stand. There's no way I could do what I'm doing today knowing you're going to ask me all these questions. . . .

9

the district court's actions, "done with even the best of intentions, simply went too far" because they "tended to exert pressure on [the defendant] . . . even if such belief was only in [the defendant's] mind"). While we need not and do not address whether the district court's e-mail was a violation of Rule 11(c)(1)'s prohibition on a district court's participation on plea negotiations, the effect of the district court's e-mail on Reggie further underscores the need to comply scrupulously with Rule 11(b)(2)'s requirements in this case. *See Henry*, 113 F.3d at 41.

The combination of these unique and unusual circumstances—Reggie's recent stroke and its impact on his ability to assist in his own defense, the denial of the continuance of the trial, and the e-mail notifying Reggie that if he did not plead guilty, the trial would begin—convince us that the Government has not met its burden to show that the Rule 11(b)(2) error was harmless.[7] *See Vonn*, 535 U.S. at 62. If the district court had engaged in a proper plea colloquy regarding voluntariness, Reggie would have had the opportunity to tell the court that he felt coerced into pleading guilty due to his health condition and the imminent trial. Therefore, there was at least a "reasonable probability" that, had Reggie provided this information after a proper Rule 11(b)(2) colloquy, the district court would not have accepted his guilty plea. *See Hemphill*, 748 F.3d at 677. The district court's flawed compliance with Rule 11 could reasonably be viewed as a material factor affecting Reggie's decision to plead guilty, and thus was not harmless error. *See Johnson*, 1 F.3d at 302.

---

> I walked in this courtroom and I would say anything to
> not be able – because I was coerced. I was forced into – because
> you wrote, "the jury would be waiting."

[7] The dissenting opinion emphasizes the district court's attempts to ascertain how much Reggie's neurological impairment affected his ability to make decisions, but it is undeniable that, as a general matter, "[j]udges are not experts in assessing the effects of a stroke on mental functioning." *Graves*, 98 F.3d at 262.

No. 15-30568

For the foregoing reasons, we VACATE the district court's acceptance of Reggie's guilty plea, the conviction, and sentence.  We REMAND for further proceedings.[8]

---

[8] As we vacate the judgment on Rule 11(b)(2) grounds, we do not address whether the district court abused its discretion in denying Reggie's continuance; whether it abused its discretion in denying Reggie's motion to withdraw his guilty plea; whether Reggie's substantial rights were affected by the district court's failure to fully advise Reggie of the rights he was waiving by pleading guilty; or whether the district court committed any errors in calculating Reggie's sentence and restitution.  These issues have been mooted by our vacatur of Reggie's guilty plea, conviction, and sentence.

No. 15-30568

KING, Circuit Judge, dissenting:

I would affirm Reggie's guilty plea, conviction, and sentence.

Specifically, I would find—unlike the majority—that the district court's failure to ask Reggie *in haec verba* about the voluntariness of his guilty plea during its plea colloquy was harmless. To put the plea colloquy into context, the district court here was faced with an uncomplicated case involving one defendant indicted on five counts of wire fraud arising out the same general scheme. Reggie was originally indicted in August 2013, and his superseding indictment occurred in February 2014. However, the district court was continually faced with delays in setting the trial date. After continuing the trial date three times over several months—twice on Reggie's motion—and setting the trial date for October 20, 2014, the district court granted another continuance following Reggie's stroke on October 6 and set a new trial date of October 27. While the district court was willing to continue the case again if Reggie provided medical documentation regarding his cognitive or physical limitations to testify or prepare for trial as a result of his stroke, this evidence was never presented. Moreover, the medical evidence that the court did have about Reggie's condition showed "only minimal restrictions [on his] daily activities." Thus, the district court continued to prepare for Reggie's trial on October 27, until Reggie indicated that he would plead guilty in court on that date. At the resulting proceeding on October 27, the district court engaged in an extended plea colloquy aimed at ascertaining whether Reggie's plea was knowing and voluntary in the aftermath of his stroke. And while the district court did not specifically ask Reggie about the voluntariness of his plea, it ultimately found, based on Reggie's answers to its questions, that "[Reggie was] able to understand and that [he] knowingly and voluntarily entered into [the] plea."

12

The majority now asserts that the failure to specifically ask Reggie about the voluntariness of his plea is not harmless because it should have been apparent that Reggie's medical condition prevented him from communicating effectively, thereby pressuring him into pleading guilty.  However, I would find that this omission is harmless for two reasons.  First, neither Reggie nor the majority suggests how Reggie's guilty plea would have changed had he been specifically asked about voluntariness.  *See United States v. Johnson*, 1 F.3d 296, 302 (5th Cir. 1993) (determining harmless error by "focus[ing] on whether the *defendant's* knowledge and comprehension of the full and correct information would have been likely to affect *his* willingness to plead guilty") (emphasis added).[1]

Second, and more important, the district court record shows that the failure was harmless.  In particular, the record demonstrates that: (1) the district court engaged in a lengthy plea colloquy where it deliberately asked Reggie questions to determine whether his plea was knowing and voluntary; (2) Reggie's answers at the plea colloquy did not demonstrate a lack of voluntariness;  and  (3) Reggie never raised the issue of coercion or involuntariness prior to or during the plea colloquy.  Although the district court never expressly discussed the voluntariness requirement of Federal Rule of Criminal Procedure 11(b), it asked a number of questions during the October 27, 2014, plea colloquy that—according to the court—were designed "to make sure that [Reggie] underst[ood] the nature of [the] proceedings . . . and that [he was] intelligently and knowingly entering into th[e] plea."  Among other

---

[1] Reggie's main argument on this point is that, had he been specifically asked about the voluntariness of his plea, he would have freely told the court that he was pleading guilty because he did not believe he could testify at trial.  However, he still fails to demonstrate how his guilty plea would have changed had this exchange occurred.

questions, the district court asked Reggie about his background, his representation by counsel, the charges against him, whether his medication interfered with his ability to understand the proceedings, and the extent of his mental functioning—including his ability to manage his finances.

During this line of questioning, Reggie's answers did not demonstrate that he was pleading involuntarily or that he was unable to comprehend or testify at the proceeding. Reggie answered questions regarding his background, explained the charges against him, responded negatively when asked if his medications interfered with his ability to understand the proceedings, and responded affirmatively when asked if he could manage his financial affairs.[2] The majority asserts that Reggie exhibited "obvious communication issues . . . during his plea hearing," but the majority is improperly inferring this point from a few awkward statements made by Reggie, rather than looking at the entire record. A full review of the record shows no statements by any party during the plea colloquy observing or voicing an objection to any communication issues by Reggie. In fact, Reggie was able to speak on his own behalf and even objected to part of the government's factual basis for his guilty plea during the plea colloquy. Moreover, while the majority asserts that medical records submitted to the district court should have made clear Reggie's inability to testify, the district court repeatedly asked for, but

---

[2] Although the majority notes Reggie's statement, "I only had my left-hand to push," in response to the court's questions regarding his finances, it omits the full exchange:

> COURT: Are you able to attend to you own finances since your stroke?
> THE DEFENDANT: I only have my left-hand to push.
> COURT: Okay. But you are – if you have somebody to assist you, you can understand your checkbook and your balance and you can pay your bills and that kind of thing?
> THE DEFENDANT: Yes.

No. 15-30568

never received, medical evidence regarding Reggie's cognitive or physical limitations to testify or prepare for trial.[3]

Although Reggie now argues that he felt coerced to plead guilty because of his medical condition, this was never raised before or during the plea colloquy.[4] *See United States v. Guichard*, 779 F.2d 1139, 1146 (5th Cir. 1986) (finding that voluntariness was not undermined because "the record contain[ed] no hint of any coercion"). The majority, for its part, now suggests another form of coercion in that the district court may have pressured Reggie to plead guilty by informing him, via e-mail, that the trial would commence on October 27, 2014, if he did not plead guilty that day. The majority mischaracterizes the e-mail and its context. The district court informed Reggie that a jury would be on stand-by and the trial would commence on October 27, because the actual trial had been rescheduled for October 27. Far from a form of judicial coercion or pressure, the district court was informing Reggie that the trial would continue as originally planned if he did not plead guilty. In fact, in light of the numerous delays involving the trial date, it appears that the district court was attempting to set a definite trial date after Reggie failed to provide medical evidence to justify another continuance.

---

[3] Although Reggie submitted records establishing his stroke diagnosis and evidence of subsequent appointments, the district court, as early as October 9, 2014, specifically asked for medical evidence of his ability to be present for trial that Reggie never proffered. Furthermore, the district court, when examining the evidence Reggie presented, noted that no records or reports clarified that Reggie's participation at trial would be life threatening. While the majority states that Reggie's inability to testify or assist in his own defense was confirmed by a neurologist's assessment that Reggie was "[u]nable to speak due to brain lesion," this assessment was made on October 29, 2014, and was never presented to the district court during or prior to the plea colloquy on October 27.

[4] As the majority recognizes, Reggie only argued that he felt coerced to plead guilty when he moved to withdraw his guilty plea—a motion filed seven months after Reggie initially pleaded guilty.

Notably, this court has held that "[t]he fact that [a district] court did not expressly use the precise word 'voluntary' when addressing [a defendant] does not render the [Rule 11] proceedings insufficient." *Guichard*, 779 F.2d at 1145. Instead, this court has looked to whether "the record shows that [a district] court ascertained from [the defendant] that the plea was in substance voluntary." *Id.* "For a plea to be knowing and voluntary, 'the defendant must be advised of and understand the consequences of the [guilty] plea.'" *United States v. Gaitan*, 954 F.2d 1005, 1011 (5th Cir. 1992) (alteration in original) (quoting *United States v. Pearson*, 910 F.2d 221, 223 (5th Cir. 1990)).

Given the record, I would conclude that the district court's failure to specifically ask Reggie *in haec verba* about voluntariness was harmless. The district court engaged in a detailed plea colloquy with Reggie aimed at determining whether he was pleading knowingly and voluntarily, and it appropriately concluded that Reggie's guilty plea met both requirements. I therefore would not second guess the district court's fact-bound conclusion on appellate review. I respectfully dissent.